Reuben D. Nathan, Esq. (SBN 208436)
Email: *rnathan@nathanlawpractice.com*
NATHAN & ASSOCIATES, APC
600 W Broadway, Suite 700
San Diego, CA 92101-3370
Phone: (619) 272-7014
Facsimile: (619) 330-1819

Ross Cornell, Esq., APC (SBN 210413)
Email: *ross.law@me.com*
111 W. Ocean Blvd., Suite 400
Long Beach, CA 90802
Phone: (562) 612-1708
Facsimile: (562) 394-9556

Attorneys for Plaintiff
Dyami Myers-Taylor and the Proposed Class

# UNITED STATES DISTRICT COURT

# FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Dyami Myers-Taylor, an individual on behalf of himself and all others similarly situated and the general public,<br><br>         Plaintiff<br>      v.<br><br>Ornua Foods North America, Inc.; Ornua Co-operative Limited; and DOES 1 through 25, inclusive,<br><br>         Defendants | Case No. **'18 CV 1538 H    MDD**<br><br>**CLASS ACTION COMPLAINT**<br><br><br>**Demand For Jury Trial** |

1

**CLASS ACTION COMPLAINT**

COMES NOW PLAINTIFF, DYAMI MYERS-TAYLOR, WHO HEREBY ALLEGES THE FOLLOWING:

Plaintiff, Dyami Myers-Taylor ("Plaintiff") brings this action on behalf of himself and all others similarly situated against Defendants, Ornua North America, Inc. and Ornua Co-operative Limited ("Defendants" or "Kerrygold").

The allegations in this Complaint, stated on information and belief, have evidentiary support or are likely to have evidentiary support after a reasonable opportunity for further investigation and discovery.

## NATURE OF ACTION

1. Plaintiff files this class action lawsuit on behalf of himself and all similarly situated persons who were misled into purchasing Kerrygold Products (as defined below) due to false and misleading advertising as described herein.

2. Plaintiff brings this action on behalf of himself and a California and Nationwide proposed class of purchasers of the Kerrygold Products for violations of the California Consumer Legal Remedies Act, the California False Advertising Law, the California Unfair Competition Law, breach of express warranty, breach of the implied warranty of merchantability and for fraud and negligent misrepresentation.

## PARTIES

3. Plaintiff, Dyami Myers-Taylor ("Plaintiff "), is a citizen of California, who resides in the county of San Diego.

4. Plaintiff has purchased Defendant's Kerrygold Products from 2014 through 2018 in store locations in Los Angeles, Orange County, and San Diego and in doing so altered his position in an amount equal to the amounts, including the price premiums, he

**CLASS ACTION COMPLAINT**

paid for the Kerrygold Products.  Plaintiff and the Proposed Class would not have purchased or paid a price premium for the Kerrygold Products had they known that the representations, "Milk From Grass-fed Cows", "Made with milk from grass-fed cows not treated with rBST or other growth hormones", "All Natural", and "100% Pure and Natural" (hereinafter collectively the "Grass-Fed Claims") were false, deceptive and/or misleading.

5.     Plaintiff saw and read the Grass-Fed Claims on product packaging and relied on the representations, statements, and warranties thereon and on the Kerrygold website in believing that the Kerrygold Products were made with milk from grass-fed cows and purchased the Kerrygold Products based on the perception of value derived from those representations, statements and warranties.  Plaintiff purchased one or more of the Kerrygold Products at a premium price and would not have made the purchases had he known the labeling was false, deceptive, and/or misleading.

6.     Defendant, Ornua Foods North America, Inc., is an New York corporation with its headquarters in Evanston, Illinois.

7.     Defendant, Ornua Co-operative Limited is an Irish corporation with its headquarters in Dublin, Ireland.

8.     The Kerrygold Products include: Salted Butter, Unsalted Butter, Naturally Softer Pure Irish Butter, Garlic & Herb Butter, Reduced Fat Irish Butter, Irish Butter With Canola Oil (hereinafter the "Kerrygold Products"), which are manufactured, packaged, marketed, advertised, distributed and sold by the Defendants through supermarket chains and retail stores in California and throughout the United States.

9.     The Kerrygold Products contain the Grass-Fed Claims, which were and are false, misleading, and deceptive claims and advertisements set forth on packaging, labeling and in advertisements as alleged herein.  On information and belief, the

**CLASS ACTION COMPLAINT**

Kerrygold Products are derived from cows that are fed soy, corn and other grains, among other non-grass feed, including grains that are genetically modified, and are thus not "grass-fed" as advertised. The false nature of the grass-fed claims set forth on the Kerrygold Products is compounded by the fact that there are other, better alternatives to genetically modified and other grains that Kerrygold could feed its cows to increase the quality of the Kerrygold Products, including 100% hay, which some of Kerrygold's competitors in fact do. Likewise, rather than disclose the use of non-grass feed, as other partially grass-fed competitors do, Kerrygold deceptively implies that its products are derived from cows that are fed only grass. On information and belief, Kerrygold chooses to feed its cows genetically modified and other grains instead of non-grain and non-genetically modified alternatives as a cost-savings measure which undermines Kerrygold's ongoing effort to posture the Kerrygold Products as "grass-fed."

10.    The true names and capacities, whether individual, corporate, associate or otherwise of each of the Defendants designated herein as a DOE are unknown to Plaintiff at this time, who therefore, sue said Defendants by fictitious names, and will ask leave of this Court for permission to amend this Complaint to show their names and capacities when the same have been ascertained. Plaintiff is informed and believes and thereon alleges that each of the Defendants designated as a DOE is legally responsible in some manner for the events and happenings herein referred to, and caused injuries and damages thereby to these Plaintiffs as alleged herein.

11.    On information and belief, Plaintiff alleges that at all times herein mentioned, each of the Defendants was acting as the agent, servant or employee of the other Defendants and that during the times and places of the incident in question, Defendants and each of their agents, servants, and employees became liable to Plaintiff

**CLASS ACTION COMPLAINT**

and class members for the reasons described in the complaint herein, and thereby proximately caused Plaintiff to sustain damages as set forth herein.

12. On information and belief, Plaintiff alleges that Defendants carried out a joint scheme with a common business plan and policies in all respects pertinent hereto and that all acts and omissions herein complained of were performed in knowing cooperation with each other.

13. On information and belief, Plaintiff alleges that the shareholders, executive officers, managers, and supervisors of the Defendants directed, authorized, ratified and/or participated in the actions, omissions and other conduct that gives rise to the claims asserted herein. Defendants' officers, directors, and high-level employees caused Kerrygold Products to be sold with knowledge or reckless disregard that the statements and representations concerning the Kerrygold Products were false and misleading.

14. Plaintiff is informed and believes, and thereon alleges, that each of the Defendants is in some manner intentionally, negligently, or otherwise responsible for the acts, omissions, occurrences, and transactions alleged herein.

## JURISDICTION AND VENUE

15. This Court has subject matter jurisdiction according to 28 U.S.C. § 1332(d), because this case is a class action where the aggregate claims of all members of the proposed class are in excess of $5,000,000.00, exclusive of interest and costs and most members of the proposed class are citizens of states different from Defendant. This Court also has supplemental jurisdiction over state law claims pursuant to 28 U.S.C. § 1367.

16. Plaintiff is a citizen of California and this Court has personal jurisdiction over Defendant because Defendant conduct business in California and otherwise

5

**CLASS ACTION COMPLAINT**

intentionally avail themselves of the markets in California so as to render the exercise of jurisdiction by this Court proper. Defendant have marketed, promoted, distributed, and sold the Kerrygold Products in California and in this District, which is where Plaintiff purchased Defendant's products.

17.     Pursuant to 28 U.S.C. §1391(b), this Court is the proper venue since the Defendant are subject to personal jurisdiction in this district and a substantial part of the events or omissions giving rise to the claims occurred in this district.

## FACTUAL BACKGROUND

18.     Grass-fed butter is one of the healthiest fats on the planet. Butter is a highly complex milk fat. It contains approximately 400 fatty acids and a healthy quantity of fat-soluble vitamins. Some fatty acids have potent biological activity, and fatty acids in grass-fed butter can affect physiology and biochemistry in a way that leads to major health benefits.

19.     Kerrygold knows that consumers are aware that the quality and source of butter products make all the difference in terms of health, and that consumers are aware that the "grass-fed" designation equates to increased health benefits. Just like the benefits of grass-fed beef are unique compared to grain-fed beef, grass-fed butter is known by the Plaintiff and the Proposed Class to be superior to all other kinds. For these reasons, Kerrygold aggressively advertises and labels its butter products as "grass-fed."

20.     One of the beneficial fatty acids in grass-fed butter is conjugated linoleic acid (CLA). It is popular as a fat loss supplement that can have a powerful effect on health, including protecting the body against cancer. Grass-fed butter contains five times more CLA than butter from grain-fed cows. Butter from grass-fed cows is also much higher in Omega-3 fatty acids and vitamin K2, compared to butter from grain-fed cows.

6

**CLASS ACTION COMPLAINT**

21.     Grass-fed butter has high levels of butyric acid. This health-promoting acid is only found in a few foods, and butter is one of them.  By consuming grass-fed butter, the consumer directly increases intake of butyric acid, which science has shown can decrease inflammation. One of the specific ways it has been shown to decrease inflammation is in the intestines of people with Crohn's disease.  Because inflammation is the cause of many diseases, having more butyric acid from grass-fed butter in the diet likely benefits many people with inflammatory health problems.  Grass-fed butter contains substantially more butyric acid than butter produced from grain-fed cows.

22.     Another beneficial vitamin in butter is Vitamin A, which has a wide range of functions for the body.  Grass-fed butter has significantly more Vitamin A than butter produced from grain-fed cows.  Vitamin A plays a crucial role in the formation and maintenance of teeth, skeletal and soft tissue, mucus membranes and skin. Vitamin A is also needed to maintain good vision, especially at night or other low-light situations. Vitamin A is essential to proper endocrine system function as well, along with reproduction and breastfeeding.

23.     Grass-fed butters contain significantly higher quantities of short- and medium-chain triglycerides (MCTs) than butter produced from grain-fed cows.  MCT's assist in supporting the immune system and boosting metabolism.  The MCTs found in grass-fed butter are more readily convertible into fuel for the body's muscles and organs and, instead being turned into fat in the body, MCTs from grass-fed butter are changed into energy.  MCT's have also been shown to suppress the appetite.

24.     Grass-fed butter is high in vitamin K2, which is a uniquely beneficial vitamin rarely found in other foods.  Grass-fed butter also has a beneficial balance of omega-3 and omega-6 fats. The specific type of acid found in grass-fed butter can help with cognitive function, kin health, and even prostaglandin balance.

7

**CLASS ACTION COMPLAINT**

25.     The nutrient density and health effects of many dairy products can vary greatly, depending on the diet of the cows.  Because grass is the natural, normal food for cows, dairy products from grass-fed cows is much healthier.  By contrast, grain-fed cows produce food with lower levels of beneficial nutrients. The positive effects of grass-fed butter are real – studies show that in areas where cows are grass-fed, individuals who ate the most high-fat dairy products had a substantially lower risk of death from cardiovascular disease.  Many consumers intentionally avoid products derived from grain-fed cows, and the advertising and labeling of the Kerrygold Products is misleading in that Plaintiff and similarly situated consumers are unable to exercise their right to choose grass-fed products.

26.     Plaintiff has purchased the Kerrygold Products from at least 2014 through 2018 from retail locations in in San Diego County. Plaintiff and class members purchased and paid a premium for Kerrygold Products in reasonable reliance on the Grass-Fed Claims, when in fact the cows were fed grains, including soy, corn and other genetically modified grains, among other non-grass feed.

27.     Kerrygold prominently advertises the Kerrygold Products as made from "grass fed cows" both on Kerrygold advertising, on Kerrygold Product packaging and on Kerrygold's public website.  The Defendant's Grass-Fed Claims are printed on labels affixed to the Kerrygold Products, on advertising materials, and on Kerrygold's public website.  At all times, in reliance on the Grass-Fed Claims, Plaintiff reasonably believed that when he purchased Kerrygold Products, they were derived from cows that had been fed only grass and were not fed genetically modified or other grains.  Had the Kerrygold Product labels accurately and truthfully represented that the Kerrygold Products were derived from cows that were fed soy, corn and other grains, including genetically modified grains, Plaintiff and the proposed class would not have purchased them or

**CLASS ACTION COMPLAINT**

would have been unwilling to pay a price premium under the false belief that they were buying products derived from cows that were fed only grass.

28. Throughout the class period, Plaintiff continued to purchase the Kerrygold Products believing them to be derived from "Milk From Grass-fed Cows", "Made with milk from grass-fed cows not treated with rBST or other growth hormones", "All Natural", and "100% Pure and Natural." Within the period Defendant maintained the grass fed claims on its website, Plaintiff, at one time or another, viewed Defendant's website and saw that Defendant claimed its Products were derived from sources advertised as grass fed. Plaintiff and class members reasonably relied on Kerrygold's representations and would not have continued to purchase the Kerrygold Products absent the misleading statements and representations made by Defendant regarding the quality of the Kerrygold Products as derived from "grass-fed cows."

29. The Grass-Fed Claims made by the Defendant regarding the Kerrygold Products are false, misleading and deceptive. During certain times of the year, Kerrygold feeds its cows genetically modified and other grains – not grass – such that the resulting products are not strictly "grass-fed." Because Kerrygold is so aggressive in marketing and labeling the Kerrygold Products as "grass-fed" products, including with the written Grass-Fed Claims and the images set forth on product labels, in advertisements and online, Kerrygold has intentionally caused the Plaintiff and Proposed Class to be under the false belief that the Kerrygold Products are strictly grass-fed, as is true of other grass-fed products produced by Kerrygold's competitors.

30. The Kerrygold Products cost more than other similar products that do have misleading labeling, statements, and representations. If the Defendant were enjoined from making the false statements and representations, the market demand and price for the Kerrygold Products would be reduced insofar as the market prices have been

**CLASS ACTION COMPLAINT**

artificially inflated as a result of the Defendants' claims, statements, and representations. Plaintiff and class members expected that any labeling from Defendant to be truthful and honest.

31.   From at least 2014 to 2018, Plaintiff saw and read similar labels prominently displayed on the Kerrygold Products at stores located in Los Angeles County, Orange County, and San Diego County and on the Kerrygold website with the prominently displayed Grass-Fed Claims and images promoting the "grass fed" cows from which the Kerrygold Products were supposedly produced, and on which Plaintiff relied on in deciding to purchase Kerrygold Products.

32.   The following images show examples of the Grass-Fed Claims from Kerrygold Product labels:



**CLASS ACTION COMPLAINT**



33. Similarly, Plaintiff viewed the Defendants' website and relied upon multiple similar representations regarding the allegedly "grass fed" cows from which the Kerrygold Products are produced. The website contained language and images promoting the "grass fed" claims, including the following three examples, all of which are intended to convey to the Plaintiff and similarly situated consumers the false impression that the Kerrygold Products are derived from cows that are 100% grass fed:



**CLASS ACTION COMPLAINT**





**CLASS ACTION COMPLAINT**

34.     Kerrygold's Grass-Fed Claims regarding the Kerrygold Products are false, misleading and deceptive in that Kerrygold feeds its cows genetically modified and other grains, such that they are not entirely "grass-fed." The existence of genetically modified and other grains in the diets of Kerrygold cows undermines the health benefits of grass-fed butter and has not been disclosed to Plaintiff and the Proposed Class, who reasonably relied on Kerrygold's representations to their detriment.

## PRIVATE ATTORNEYS GENERAL ALLEGATIONS

35.     In addition to asserting class claims, Plaintiffs assert claims on behalf of class members pursuant to *California Business & Professions Code § 17200, et seq.* The purpose of such claims is to obtain injunctive orders regarding the false labeling, deceptive marketing and consistent pattern and practice of falsely promoting natural claims and the disgorgement of all profits and/or restoration of monies wrongfully obtained through the Defendant' pattern of unfair and deceptive business practices as alleged herein. This private attorneys general action is necessary and appropriate because Defendant have engaged in wrongful acts described herein as part of the regular practice of its business.

## CLASS ACTION ALLEGATIONS

36.     Plaintiff brings this action on his own behalf and on behalf of all other persons similarly situated pursuant to Federal Rule of Civil Procedure 23.

37.     Plaintiff seeks to represent the following Class and Sub-Class (hereinafter collectively the "Classes"):

**CLASS ACTION COMPLAINT**

All persons residing in the United States who purchased the Kerrygold Products for personal use and not for resale during the time period July 6, 2014, through the present (the "Class").

All persons residing in the State of California who purchased the Kerrygold Products primarily for personal, family or household purposes and not for resale during the time period July 6, 2014, through the present (the "Sub-Class").

38.    The Classes comprise many thousands of persons throughout the United States and California, the joinder of whom is impracticable, and the disposition of their claims in a class action will benefit the parties and the Court. The Classes are sufficiently numerous because on information and belief, thousands to hundreds of thousands of units of the Kerrygold Products have been sold in the United States and State of California during the time period July 6, 2014, through the present (the "Class Period").

39.    There is a well-defined community of interest in this litigation and the Classes are easily ascertainable:

a. Numerosity:  The members of the Classes are so numerous that any form of joinder of all members would be unfeasible and impractical.  On information and belief, Plaintiff believes the size of the Classes exceed thousands of members.

b. Typicality:  Plaintiff is qualified to and will fairly and adequately protects the interests of each member of the Classes with whom he has a well-defined community of interest and the claims (or defenses, if any), are typical of all members of the Classes.

c. Adequacy:  Plaintiff does not have a conflict with the Classes and is qualified to and will fairly and adequately protect the interests of each member of the Classes with whom he has a well- defined community of interest and typicality of claims, as alleged herein.  Plaintiff acknowledges that he has an obligation to

14

**CLASS ACTION COMPLAINT**

the Court to make known any relationship, conflict, or difference with any putative class member.  Plaintiff's attorneys and proposed class counsel are well versed in the rules governing class action and complex litigation regarding discovery, certification, and settlement.

d. Superiority:  The nature of this action makes the use of class action adjudication superior to other methods.  Class action will achieve economies of time, effort, and expense as compared with separate lawsuits, and will avoid inconsistent outcomes because the same issues can be adjudicated in the same manner and at the same time for the entire class.

40.    There exist common questions of law and fact that predominate over questions that may affect individual class members. Common questions of law and fact include, but are not limited to, the following:

a. Whether Defendants' conduct is a fraudulent business act or practice within the meaning of Business and Professions Code section 17200, *et seq*.;

b. Whether Defendants' advertising is untrue or misleading within the meaning of Business and Professions Code section 17500, *et seq*.;

c. Whether Defendants made false and misleading representations in the advertising and/or packaging of the Kerrygold Products;

d. Whether or not Defendants website contains misleading statements or representations;

e. Whether Defendants knew or should have known that the "Milk From Grass-fed Cows", "Made with milk from grass-fed cows not treated with rBST or other growth hormones", "All Natural", and "100% Pure and Natural" representations were false;

15

f.  Whether Defendants represented that the Kerrygold Products have characteristics, benefits, uses, or quantities which they do not have;

g.  Whether Defendants representations regarding the Kerrygold Products are false;

h.  Whether Defendants warranted the health and wellness of the Kerrygold Products by virtue of the statements, "Milk From Grass-fed Cows", "Made with milk from grass-fed cows not treated with rBST or other growth hormones", "All Natural", and "100% Pure and Natural";

i.  Whether the Defendants breached warranties regarding the Kerrygold Products;

j.  Whether the Defendants committed statutory and common law fraud; and

k.  Whether Defendants' conduct as alleged herein constitutes an unlawful business act or practice within the meaning of Business and Professions Code section 17200, *et seq*.;

l.  Whether the Grass-Fed Claims deceived Plaintiff and the Classes, who reasonably relied on them in making their purchase decisions.

41.  Plaintiff's claims are typical of the claims of the Classes, and Plaintiff will fairly and adequately represent and protect the interests of the Classes. Plaintiff has retained competent and experienced counsel in class action and other complex litigation.

42.  Plaintiff and the Classes have suffered injury in fact and have lost money as a result of Defendants' false representations.  Indeed, Plaintiff purchased the Kerrygold Products under the belief that the cows were grass-fed and that no genetically modified or other grains were introduced through any part of the process in creating the Kerrygold Products.  Plaintiff relied on Defendants' packaging, labeling, marketing and website and would not have purchased the Kerrygold Products or paid a premium for them if he had

16

**CLASS ACTION COMPLAINT**

known that they did not have the characteristics, ingredients, uses, benefits, or quantities as represented vis-à-vis the Grass-Fed Claims.

43. The Defendants' misrepresentations regarding the statements and representations related to the Kerrygold Products were material insofar as consumers relate to them as indicative of healthier foods and tend to be willing to pay a price premium for healthier foods, including milk produced from grass-fed cows. The Defendants are aware of consumer preference for healthier and 'natural' products and therefore have implemented a strategic false advertising and marketing campaign intended to deceive consumers into thinking that the Kerrygold Products are "grass-fed" even though they are derived from milk produced with genetically modified and other grains.

44. A class action is superior to other available methods for fair and efficient adjudication of this controversy. The expense and burden of individual litigation would make it impracticable or impossible for class members to prosecute their claims individually.

45. The trial and litigation of Plaintiff's claims are manageable. Individual litigation of the legal and factual issues raised by Defendants' conduct would increase delay and expense to all parties and the court system. The class action device presents far fewer management difficulties and provides the benefits of a single, uniform adjudication, economies of scale, and comprehensive supervision by a single court.

46. Defendants have acted on grounds generally applicable to the Classes as a whole, thereby making final injunctive relief and/or corresponding declaratory relief appropriate with respect to the Classes as a whole. The prosecution of separate actions by individual class members would create the risk of inconsistent or varying adjudications

17

**CLASS ACTION COMPLAINT**

with respect to individual members of the Classes that would establish incompatible standards of conduct for the Defendants.

47.     Absent a class action, Defendants are likely to retain the benefits of their wrongdoing. Because of the small size of the individual class members' claims, few, if any, class members could afford to seek legal redress for the wrongs complained of herein. Absent a representative action, the class members will continue to suffer losses and Defendant will be allowed to continue these violations of law and to retain the proceeds of their ill-gotten gains.

48.     Excluded from the class are the Defendants in this action, any entity in which Defendants have a controlling interest, including, but not limited to officers, directors, shareholders, current employees and any and all legal representatives, heirs, successors, and assigns of Defendants.

49.     Were if not for this class action, most class members would find the cost associated with litigating claims extremely prohibitive, which would result in no remedy.

50.     This class action would serve to preserve judicial resources, the respective parties' resources, and present fewer issues with the overall management of claims, while at the same time ensuring a consistent result as to each class member.

### FIRST CAUSE OF ACTION
Violations of California Civil Code § 1750, *et seq.*
By Plaintiff and the Proposed Sub-Class against Defendants
(Injunctive Relief Only with Reservation)

51.     Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

**CLASS ACTION COMPLAINT**

52.     Plaintiff and the Sub-Class are "consumers" as defined by Cal. Civ. Code § 1761(d) and the Kerrygold Products are each a "good" as defined by Cal. Civ. Code § 1761(a).

53.     The California Consumers Legal Remedies Act, Cal. Civ. Code § 1770(a)(5), expressly prohibits "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which he or she does not have." The Defendants have violated § 1770(a)(5) insofar as the statements, "Milk From Grass-fed Cows", "Made with milk from grass-fed cows not treated with rBST or other growth hormones", "All Natural", and "100% Pure and Natural" constitute characteristics, ingredients and/or benefits that the Kerrygold Products do not have, i.e. that the Kerrygold Products are produced from cows that have not been fed anything other than grass.

54.     The California Consumers Legal Remedies Act, Cal. Civ. Code § 1770(a)(7), expressly prohibits "[r]epresenting that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another." The Defendants have violated § 1770(a)(7) insofar as the Kerrygold Products are represented as "Milk From Grass-fed Cows", "Made with milk from grass-fed cows not treated with rBST or other growth hormones", "All Natural", and "100% Pure and Natural" which constitutes a particular quality or grade, when in truth the Kerrygold Products are produced from cows that are fed genetically modified and other grains.

55.     The California Consumers Legal Remedies Act, Cal. Civ. Code § 1770(a)(9), expressly prohibits "[a]dvertising goods or services with intent not to sell them as advertised." The Defendants have violated § 1770(a)(9) insofar as the Kerrygold Products have been advertised as "Milk From Grass-fed Cows", "Made with milk from

**CLASS ACTION COMPLAINT**

grass-fed cows not treated with rBST or other growth hormones", "All Natural", and "100% Pure and Natural", but are not advertised or sold in a manner consistent with those claims. Because the Defendants know that the Kerrygold Products are produced from cows that are fed genetically modified and other grains, the Defendants intended not to the sell the Kerrygold Products as advertised, in violation of the CLRA.

56.    The California Consumers Legal Remedies Act, Cal. Civ. Code § 1770(a)(16), expressly prohibits "[r]epresenting that the subject of a transaction has been supplied in accordance with a previous representation when it has not." The Defendants have violated § 1770(a)(16) insofar as the Defendants have represented that the Plaintiff and Sub-Class have been supplied with "Milk From Grass-fed Cows", "Made with milk from grass-fed cows not treated with rBST or other growth hormones", "All Natural", and "100% Pure and Natural" when they have not.

57.    Plaintiff and the proposed Sub-Class of California class members suffered injuries caused by Defendants because they would not have purchased the Kerrygold Products if the true facts were known concerning the Defendants' false and misleading claims "Milk From Grass-fed Cows", "Made with milk from grass-fed cows not treated with rBST or other growth hormones", "All Natural", and "100% Pure and Natural".

58.    On or about June 25, 2018, prior to filing this action, a notice letter was served on Defendants advising the Defendant that they are in violation of the CLRA and demanding remedies for Plaintiff and class members in accordance with Cal. Civ. Code 1782(a), which is attached to this complaint as "Exhibit A".

59.    Plaintiff seeks injunctive relief and damages for this violation of the CLRA on behalf of himself and class members. In compliance with Cal. Civ. Code 1782(d), Plaintiff has executed the affidavit of venue attached hereto and filed concurrently herewith as Exhibit B.

20

**CLASS ACTION COMPLAINT**

## SECOND CAUSE OF ACTION

Violations of California Business & Professions Code §§17500, *et seq.*
By Plaintiff and the Proposed Sub-Class against Defendants

60.    Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

61.    Pursuant to Cal. Bus. & Prof. Code §§ 17500, *et seq.*, it is "unlawful for any person to make or disseminate or cause to be made or disseminated before the public in this state, ... in any advertising device ... or in any other manner or means whatever, including over the Internet, any statement, concerning ... personal property or services, professional or otherwise, or performance or disposition thereof, which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."

62.    Defendants committed acts of false advertising, as defined by §17500, by making statements and representations regarding the Kerrygold Products because those claims are false and misleading.

63.    Because Defendants knew or should have known through the exercise of reasonable care that the "Milk From Grass-fed Cows", "All Natural", and "100% Pure and Natural" regarding the Kerrygold Products were false, untrue and misleading to Plaintiff and class members.

64.    Defendants' actions in violation of § 17500 were false and misleading such that the Plaintiff, the Proposed Sub-Class and the general public are and were likely to be deceived.

65.    Plaintiff and the Proposed Sub-Class lost money or property as a result of Defendants' false advertising violations, because they would not have purchased or paid

21

**CLASS ACTION COMPLAINT**

a premium for the Kerrygold Products if they had not been deceived by the false and misleading statements and representations regarding the Grass-Fed Claims.

66.     Plaintiff and the Proposed Sub-Class paid a premium for the Kerrygold Products due to their reliance on the Grass-Fed Claims and on the Defendants' reputation.

## THIRD CAUSE OF ACTION
For Breach of Express Warranty
Violations of Cal. Com. Code § 2313(1)
By Plaintiff and the Proposed Sub-Class against the Defendants

67.     Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

68.     Defendants made representations, promises and/or affirmations of fact constituting express warranties regarding the Grass-Fed Claims which are/were contained on the Kerrygold Products and on Defendants' website.  Defendants' statements, representations, and/or warranties regarding the Grass-Fed Claims formed a basis of the bargain on which the Plaintiff and the Proposed Sub-Class relied on in deciding to purchase and actually purchasing the Kerrygold Products.  The warranties failed to comply with the affirmation that the Kerrygold Products were grass-fed.

69.     The Defendants breach the express warranties by selling the Kerrygold Products in contravention of the express warranties insofar as the Kerrygold Products are not "Milk From Grass-fed Cows", "Made with milk from grass-fed cows not treated with rBST or other growth hormones, "All Natural", and "100% Pure and Natural."

70.     Defendants' breach of the express warranties were the actual and proximate cause of damage to the Plaintiff and the Proposed Sub-Class including, *inter alia*, the loss of the purchase prices and/or the payment of a price premium in connection with their purchase of the Kerrygold Products.

22

**CLASS ACTION COMPLAINT**

71. Plaintiff provided written notice of breach to the Defendants, who failed to adequately respond or remedy the breach. The notice is attached to this complaint as "Exhibit A".

72. Accordingly, Plaintiff and the Proposed Sub-Class seek actual damages arising from the Defendants' breach of express warranty.

## FOURTH CAUSE OF ACTION
For Fraud
By Plaintiff and Proposed Class against Defendants

73. Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

74. Plaintiff brings this claim individually and on behalf of the Proposed Class against Defendants. At all times in purchasing Kerrygold Products, Plaintiff and class members believed prior to making purchase that they were purchasing products that were fed only grass and were 'natural' as a result of Defendants' labeling. From at least 2014 through 2018, Plaintiff saw and read similar labels prominently displayed on the Kerrygold Products at stores located in California and on its website, including the Grass-Fed Claims on which Plaintiff relied on in deciding to purchase Kerrygold Products. Plaintiff also viewed Defendants' website, at one time or another during the class period, which also displayed the Grass-Fed claims which caused Plaintiff to purchase Kerrygold Products under the belief that the Kerrygold Products were produced from cows that were fed only grass. Plaintiff and class members read and relied on the Grass-Fed Claims made on the packaging of the Kerrygold Products and on Defendants' website and paid a premium as a result of Defendant's statements, representations, and/or warranties.

**CLASS ACTION COMPLAINT**

75.     As discussed above, Defendants provided Plaintiff and Class members with false or misleading material information in connection with the Grass-Fed Claims contained on the labeling of the Kerrygold Products and the Defendants' website. Plaintiff and class members relied on Defendants' statements, representations, and warranties prior to making the decision to purchase the Kerrygold Products.  Defendants misrepresented and/or failed to disclose material facts to Plaintiff and class members about the Kerrygold Products  - they cows are not fed only grass, are fed genetically modified and other grains, and are not natural.

76.     The Defendants' misrepresentations and omissions regarding the Grass-Fed Claims were made with knowledge of the falsehood thereof or in conscious disregard of the likelihood of their falsehood.

77.     The misrepresentations and/or omissions made by Defendants, upon which Plaintiff and Class members reasonably and justifiably relied, were intended to induce and actually induced Plaintiff and the Proposed Class members to purchase the Kerrygold Products.

78.     The fraudulent actions of Defendants caused damage to Plaintiff and the Proposed Class members, who are entitled to damages, punitive damages, and other legal and equitable relief as a result.

## FIFTH CAUSE OF ACTION
For Negligent Misrepresentation
By Plaintiff and Proposed Class against Defendants

79.     Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

24

**CLASS ACTION COMPLAINT**

80.    Plaintiff brings this claim individually and on behalf of the Proposed Class against Defendants.  At all times in purchasing Kerrygold Products, Plaintiff and class members believed prior to making purchase that they were purchasing products that were produced from milk from cows fed only grass as a result of Defendant's product labeling and advertising.  Plaintiff and class members read Defendant's labeling on the front of the Kerrygold Products containing the Grass-Fed Claims and paid a premium as a result of Defendant's' statements, representations, and/or warranties.

81.    Defendants misrepresented the nature, quality and ingredients of the Kerrygold Products.   Defendant had a duty to disclose this information.

82.    At the time Defendant made the false claims such as "Milk From Grass-fed Cows", "Made with milk from grass-fed cows not treated with rBST or other growth hormones", "All Natural", and "100% Pure and Natural", Defendants knew or should have known that these representations were false or made them without knowledge of their truth or veracity.

83.    Defendants negligently misrepresented and omitted material facts about the Kerrygold Products, in that the cows used to produce the Kerrygold Products were fed materials other than grass, including genetically modified and other grains, and the Proposed Class relied upon the negligent statements or omissions and were deceived and induced into purchasing the Kerrygold Products.

84.    The negligent misrepresentations and/or omissions made by Defendant, upon which Plaintiff and the Proposed Class members reasonably and justifiably relied, were intended to induce and actually induced Plaintiff and the Proposed Class members to purchase the Kerrygold Products.  The Grass-Fed Claims were material to the Plaintiff, the proposed class, and any reasonable consumer in light of the health benefits of grass-fed butter and the prominent Grass-Fed Claims published by Kerrygold.

**CLASS ACTION COMPLAINT**

85.     Plaintiff and Class members would not have purchased the Kerrygold Products and/or would not have paid a price premium therefore, if the true facts had been known to them regarding the falsity of Defendants' statements and representations.

86.     The negligent actions of Defendants caused damage to Plaintiff and the Proposed Class members, who are entitled to damages and other legal and equitable relief as a result.

## SIXTH CAUSE OF ACTION
For Violation Cal. Bus. & Prof. Code § 17200, *et seq.*
By Plaintiff and Proposed Sub-Class against Defendants

87.     Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

88.     Plaintiff brings this claim individually and on behalf of the proposed Sub-Class against Defendants.

89.     Defendants are subject to California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.* (the "UCL").  The UCL provides, in pertinent part: "Unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising …."

90.     Defendants know and have known that the Grass-Fed Claims are false, deceptive and misleading to a reasonable consumer.

91.     The foregoing acts and omissions by the Defendant constitute unfair, fraudulent business acts or practices and false advertising.

92.     As alleged hereinabove, the false, deceptive and misleading All Natural Claims by the Defendants are and were likely to deceive the Plaintiff, the Proposed Sub-

26

**CLASS ACTION COMPLAINT**

Class, reasonable consumers and members of the general public and are therefore "fraudulent" within the meaning of the UCL.

93. The foregoing violations of the Consumer Legal Remedies Act, the False Advertising Law and the California Commercial Code constitute "unlawful" business practices within the meaning of the UCL.

94. Defendants' misrepresentations and other conduct, described herein, violated the "unfair" prong of the UCL in that its conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous, as the gravity of the conduct outweighs any alleged benefits. The harm is substantial given the fact consumers are misled as to the nature of the Kerrygold Products and the Grass-Fed Claims. Plaintiff and the Proposed Sub-Class have thereby been deceived and misled into unfairly paying premium prices.

95. Defendants have specific knowledge that its natural claims are false and misleading, but continued to market the Kerrygold Products with the intent of making substantial profits based on the unfair, fraudulent, deceptive practices alleged herein.

96. The Defendants' conduct is also unfair given the huge profits derived from the sale of the Kerrygold Products at the expense of consumers as a result of the false and misleading Grass-Fed Claims.

97. Defendants violated the "fraudulent" prong of the UCL by making false statements, untruths, and misrepresentations about the Kerrygold Products vis-à-vis the Grass-Fed Claims which are/were likely to deceive the Plaintiff, the Proposed Sub-Class, reasonable consumers and the general public.

98. Plaintiff, the Class, and the Sub-Class lost money or property as a result of Defendant' UCL violations because they would not have purchased the Kerrygold Products, would not have purchased the amount of Kerrygold Products they purchased,

**CLASS ACTION COMPLAINT**

and/or would not have paid the premium price they paid for the Kerrygold Products if the true facts were known concerning the false and misleading statements set forth in the Grass-Fed Claims.

99.    Defendants' business practices, as detailed above, are unethical, oppressive and unscrupulous, and they violate fundamental policies of this state.  Further, any justification for Defendants' wrongful conduct is outweighed by the adverse effects of such conduct.

100.   Plaintiff and the Sub-Class members could not reasonably avoid the harm caused by Defendants' wrongful practices. Assuming, arguendo, that Defendants' practices are/were not express violations of the laws set forth above, those practices fall within the penumbra of such laws and a finding of unfairness can properly be tethered to the public policies expressed therein. Thus, Defendants engaged in unfair business practices prohibited by California Business & Professions Code § 17200 et seq.

101.   Plaintiff, the Class, and the Sub-Class are entitled to restitution and injunctive relief.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seeks judgment against Defendant, as follows:

a. For an order certifying the nationwide Class and the Sub-Class under Rule 23 of the Federal Rules of Civil Procedure;

b. For an order certifying Plaintiff as the representative of the Class and Sub-Class and Plaintiff's attorneys as Class Counsel to represent members of the Class and Sub-Class;

c. For an order declaring the Defendants' conduct violates the statutes and laws referenced herein;

28

**CLASS ACTION COMPLAINT**

d. For an order to correct, destroy, and change all false and misleading labeling and website terms relating to Defendants' statements and representations;

e. For an order finding in favor of Plaintiff, the Class and the Sub-Class on all counts asserted herein;

f. For compensatory and punitive damages in amounts to be determined;

g. For prejudgment interest on all amounts awarded;

h. For an order of restitution, disgorgement of profits, and all other forms of equitable monetary relief;

i. For injunctive relief as pleaded or as the Court may deem proper; and

j. For an order awarding Plaintiff, the Class, and the Sub-Class their reasonable attorneys' fees and expenses and costs of suit.

## DEMAND FOR TRIAL BY JURY

Plaintiff demands a trial by jury of all issues so triable.

Respectfully submitted,

Dated: July 6, 2018                    LAW OFFICES OF ROSS CORNELL, APC

By:       /s/ Ross Cornell
          Ross Cornell, Esq.
          Attorneys for Plaintiff,
          DYAMI MYERS-TAYLOR and the
          Proposed Classes

29

**CLASS ACTION COMPLAINT**

**EXHIBIT A**

LAW OFFICES OF

# ROSS CORNELL

A PROFESSIONAL CORPORATION

111 W. OCEAN BLVD., SUITE 400 • LONG BEACH, CALIFORNIA 90802
TELEPHONE (562) 612-1708 • FACSIMILE (562) 394-9556
ROSS.LAW@ME.COM

June 25, 2018

***Via Certified Mail - Return Receipt Requested***

Ornua Foods North America, Inc.
1007 Church Street, Suite 800
Evanston, IL 60201

Ornua Co-operative Limited
Grattan House, Mt Street Lower, Grand Canal Dock
Dublin, Ireland

Re:     *Demand Letter Pursuant to California Civil Code § 1782, U.C.C. §§ 2-313, 2-314, and other applicable laws.*

To Whom It May Concern:

This letter serves as a notice and demand for corrective action on behalf of Dyami Myers-Taylor and all other persons similarly situated, arising from breaches of warranty and violations of numerous provisions of California consumer laws including the Consumers Legal Remedies Act, Civil Code § 1770, including but not limited to subsections (a)(5), (7), and (9). This letter also serves as notice pursuant to Cal. Com. Code § 2607(3)(a) and U.C.C. 2-607(3)(A) concerning the breaches of express and implied warranties described herein.

You have participated in the manufacture, marketing, and sale of the following Kerrygold Products, including, but not limited to:

- Salted Butter,
- Unsalted Butter,
- Naturally Softer Pure Irish Butter,
- Garlic & Herb Butter,
- Reduced Fat Irish Butter,
- Irish Butter With Canola Oil

Collectively, the foregoing products will be referred to herein as the "Kerrygold Products."

On Kerrygold Product labels and on the *kerrygoldusa.com* website, you misrepresent the Kerrygold Products as being derived from "milk from grass-fed cows" and as "natural." Specifically, the labels of the Kerrygold Products include the phrase "grass-fed" on the front label and "natural" claims are made on your website and are reaffirmed on the inside of the Kerrygold Product packaging. Below is a picture of one

Myers-Taylor v. Ornua Foods, et al.
June 25, 2018
Page 2 of 5

of the Kerrygold Products that prominently displays the word "grass-fed" on the front label.





Your representations regarding the "grass-fed" nature of the Kerrygold Products are false and misleading because the cows are fed grains. Consumers are well aware of the health benefits associated with grass-fed products, which is the reason you have decided to promote the Kerrygold Products in a manner that highlights this misleading fact. The representations that the Kerrygold Products are "natural" are similarly misleading because they contain artificial or synthetic ingredients, including the inclusion of genetically modified grains.

Mr. Myers-Taylor is a resident of California, and has purchased Kerrygold Products based on labeling stating that the Kerrygold Products were "grass-fed" or "natural." He would not have purchased or would have paid significantly less for the Kerrygold Products if the labels had not stated that the Kerrygold Products were grass-fed or natural. Mr. Myers-Taylor purchased the Kerrygold Products within the past three years on multiple occasions from retail locations in California.

The California Consumers Legal Remedies Act, Cal. Civ. Code § 1770(a)(5), expressly prohibits "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a

Myers-Taylor v. Ornua Foods, et al.
June 25, 2018
Page 3 of 5

person has a sponsorship, approval, status, affiliation, or connection which he or she does not have." Our clients contends that you violated § 1770(a)(5) insofar as you have represented that the Kerrygold Products have characteristics, ingredients and/or benefits that they do not have, including that they are "natural" and derived from "grass-fed cows."

The California Consumers Legal Remedies Act, Cal. Civ. Code § 1770(a) (7), expressly prohibits "[r]epresenting that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another." You violated § 1770(a)(7) insofar as the Kerrygold Products are represented as natural and grass-fed, which constitutes a particular quality or grade, when in truth they are derived from cows that are fed grains, including genetically modified grains, and are therefore not natural.

The California Consumers Legal Remedies Act, Cal. Civ. Code § 1770(a)(9), expressly prohibits "[a]dvertising goods or services with intent not to sell them as advertised." You violated § 1770(a)(9) insofar as the Kerrygold Products have been advertised with claims that they are derived from "grass-fed cows" and are "natural," but are not advertised or sold in a manner consistent with those claims. Because you know that the Kerrygold Products are derived from cows that are fed grains, including genetically modified grains, you intended not to the sell them as advertised, in violation of the CLRA.

The California Consumers Legal Remedies Act, Cal. Civ. Code § 1770(a)(16), expressly prohibits "[r]epresenting that the subject of a transaction has been supplied in accordance with a previous representation when it has not." You violated § 1770(a)(16) insofar as you have represented that the Plaintiff and similarly situated consumers have been supplied with "grass-fed" butter when they have not.

Our client and others reasonably relied on the language advertised by Kerrygold in promoting, marketing, labeling and selling the Kerrygold Products. Our client and others are, therefore, the victims of a planned pattern and scheme of misleading advertising regarding the advertising, promotion, and sale of goods that violates the CLRA. Your pattern and practice of violating the CLRA and falsely advertising "grass-fed" and "natural" claims constitute unfair business practices within the meaning of California Business and Professions Code § 17200 and false advertising pursuant to § 17500. Furthermore, the aforementioned conduct constitutes a violation of Cal. Com. Code § 2313(1) and 2314 and the rules regarding express and implied warranties.

**YOU HAVE THIRTY (30) DAYS** from the date on which this notice is served upon you to correct, repair, replace, or otherwise rectify the foregoing violations as to our client and all aggrieved consumers. Our client demands that Kerrygold immediately cease the unlawful business practices described herein, disgorge the profits derived from its unlawful business practice and false advertising, and make restitution to our client and all similarly situated purchasers of the Kerrygold Products, without limitation.

Myers-Taylor v. Ornua Foods, et al.
June 25, 2018
Page 4 of 5


**FAILURE TO TAKE ACTION WITHIN 30 DAYS OF THE RECEIPT OF THIS NOTICE SHALL RESULT IN THE FILING OF A CIVIL LAWSUIT IN U.S. DISTRICT COURT** for damages, restitution and injunctive relief and all other appropriate relief on behalf of our client and all others similarly situated pursuant to *Cal. Civil Code* § 1780, *et seq.*, *Cal. Business and Prof. Code* §§ 17200 and 17500 and for statutory damages, punitive damages, treble damages, and attorney fees and costs as authorized by law.

Any response hereto shall be provided in written format and shall be clear and understandable and mailed via certified mail to the following addresses:

Ross Cornell, Esq.
111 W. Ocean Blvd., Suite 400
Long Beach, CA 90802

Reuben D. Nathan, Esq.
600 W Broadway, Ste. 700
San Diego, CA 92101-3370


**NOTICE AND DEMAND TO PRESERVE EVIDENCE.** This letter also constitutes notice to Kerrygold that it is not to destroy, conceal or alter in any manner whatsoever any evidence, documents, merchandise, information, paper or electronic data and/or other tangible items or property potentially discoverable in the above- referenced matter, including but not limited to documents that relate to your processes for advertising products online, your process for creating marketing materials and product labels, and all documents that relate to your advertising and feed practices regarding Kerrygold cows and Kerrygold Products, including, but not limited to, the following:

1. All documents concerning the ingredients, formula, and manufacturing process for the Kerrygold Products;

2. All communications with any U.S. administrative entity, or complaints by any private person or entity concerning product development, manufacturing, marketing and sales of the Kerrygold Products;

3. All documents concerning the advertisement, marketing, labeling, distribution, or sale of the Kerrygold Products;

4. All communications with customers concerning complaints or comments concerning the Kerrygold Products; and

5. All media content addressing the grass-fed v. grain-fed or "natural" claims regarding the Kerrygold Products.

Myers-Taylor v. Ornua Foods, et al.
June 25, 2018
Page 5 of 5


We look forward to your written response.  If you fail to adequately redress the matters set forth herein within thirty (30) days, be advised that we will seek damages under Civil Code § 1780 on a class-wide basis.  Be advised that Mr. Myers-Taylor is acting on behalf of a class defined as all persons nationwide and in California who purchased the Kerrygold Products.  A similar class of purchasers of different products have been certified in a separate action on similar grounds, which will be the result in the instant matter should you fail to take appropriate corrective action.  In order to assure that your obligation to preserve documents and things will be met, please forward a copy of this letter to any and all persons and entities with custodial responsibilities for the items referred to herein and other relevant evidence.

To cure the defects described above, we demand that you (1) cease and desist from continuing to mislabel the Kerrygold Products; (2) issue an immediate recall on any Kerrygold Products bearing misleading "grass-fed" or "natural" statements; and (3) make full restitution to all purchasers of the Kerrgold Products of all purchase money obtained from sales thereof.

We are willing to negotiate to attempt to resolve the demands asserted in this letter.  If you wish to enter into such discussions, please contact me immediately.  If I do not hear from you promptly, I will conclude that you are not interested in resolving this dispute short of litigation.  If you contend that any statement in this letter is inaccurate in any respect, please provide us with your contentions and supporting documents promptly.

Very truly yours,


*/s/Ross Cornell*
Ross Cornell, Esq.

**EXHIBIT B**

## PLAINTIFF'S VENUE DELCARATION
### [CAL. CIV. CODE §1780(d)]

I, Dyami Myers-Taylor, declare as follows in accordance with California Civil Code Section 1780(d):

1. I am the plaintiff in this action and I am a citizen of the state of California. I have personal knowledge of the facts stated herein and if called as a witness, I could and would testify competently thereto.

2. The complaint filed in this action is filed in the proper place for trial pursuant to California Civil Code Section 1780(d) because the Defendants, Ornua North America, Inc. and Ornua Co-operative Limited ("Defendants") conduct substantial business in this District, Plaintiff purchased Defendants' products in the District, and Plaintiff resides in the District.

3. I purchased Ornua North America, Inc. and Ornua Co-operative Limited brand products "Kerrygold" from stores located in San Diego County, California. I relied on the Defendant's false and misleading advertising that the products were grass-fed and natural, which was a substantial factor influencing my decision to purchase the products.

4. If I were aware that the Defendant's products were grain-fed, I would not have purchased them.

I declare under penalty of perjury under the laws of the state of California that the foregoing is true and correct as executed on _____ 6/24/2018 _____ in San Diego, California.

DocuSigned by:

*Dyami Myers-Taylor*
8079606F8F19451...

Dyami Myers-Taylor