1  Douglas A. Thompson (SBN 155619)
   BRYAN CAVE LEIGHTON PAISNER, LLP
2  120 Broadway, Suite 300
   Santa Monica, California 90401
3  Direct: 310/576-2106
   Fax: 310/260-4106
4  Douglas.Thompson@bclplaw.com

5  Merrit M. Jones (SBN 209033)
   BRYAN CAVE LEIGHTON PAISNER, LLP
6  Three Embarcadero Center, 7th Floor
   San Francisco, California 94111
7  Direct: 415/675-3435
   Fax: 415/675-3635
8  Merrit.Jones@bclplaw.com

9  Attorneys for Defendants Ornua Foods
   North America, Inc. and Ornua Co-operative Limited

10

11              **UNITED STATES DISTRICT COURT**

12        **FOR THE SOUTHERN DISTRICT OF CALIFORNIA**

13

14  Dyami Myers-Taylor, an individual on          Case No. 3:18-CV-01538-H-MDD
    behalf of himself and all others similarly
15  situated and the general public,              **DEFENDANTS' MEMORANDUM
                                                  OF POINTS & AUTHORITIES IN
16              Plaintiff,                         SUPPORT OF MOTION TO
                                                  DISMISS FIRST AMENDED
17        v.                                       COMPLAINT**

18  Ornua Foods North America, Inc.; Ornua       [Filed Concurrently With Notice of
    Co-operative Limited; and DOES 1             Motion and Motion to Dismiss;
19  through 25, inclusive,                        Request for Judicial Notice; [Proposed]
                                                  Order]
20              Defendants.
                                                  Date:        January 22, 2019
21                                                Time:        10:30 a.m.
                                                  Location:    Courtroom 15a
22
                                                  Action Filed:   July 6, 2018
23

24

25

26

27

28

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

# **TABLE OF CONTENTS**

**Page**

I.     INTRODUCTION ...................................................................................1

II.    THE COMPLAINT'S ALLEGATIONS ...............................................2

    A.     The Challenged Claims, and Factual Background.......................2

    B.     Alleged Changes to the Kerrygold Websites ..............................4

    C.     Plaintiff's Alleged Health Benefits From Grass-Fed Butter .................5

    D.     Advertising of the Butter Products ...............................................5

    E.     Purchase of the Butter Products and Damages ...........................5

    F.     The Conclusory Causes of Action Asserted ...............................6

III.   LEGAL STANDARD ...........................................................................6

IV.    THE NATIONWIDE CLASS CLAIMS SHOULD BE DISMISSED UNDER RULE 12(b)(2) FOR LACK OF PERSONAL JURISDICTION. ....................................................................................7

V.     THE COMPLAINT SHOULD BE DISMISSED UNDER RULE 12(b)(6). ....................................................................................9

    A.     Plaintiff Cannot Plausibly Allege A False Or Misleading Statement. ....................................................................................9

        1.     The Grass-Fed Claims Are Not False or Misleading. ................10

        2.     The Natural Claims Are Not False or Misleading. ....................10

        3.     Plaintiff's Interpretation Conflicts With Federal Law. ..............11

        4.     Plaintiff's Interpretation Fails Reasonable Consumer Test.......................................................................................12

        5.     Plaintiff's Implausible Interpretations and Theories Have Been Rejected by Several Courts to Consider Them. ................14

    B.     Plaintiff Cannot Satisfy Standing Requirements by Alleging Reliance, Causation and Damages With Rule 9(b) Specificity. ...........17

VI.    PLAINTIFF'S INDIVIDUAL CAUSES OF ACTION EACH FAIL. ...........20

    A.     Plaintiff's CLRA and FAL Claims Fail. ................................20

    B.     Plaintiff's Claims for Breach of Express Warranty Fail....................21

    C.     Plaintiff's Fraud and Negligent Misrepresentation Claims Fail. ................21

    D.     Plaintiff's UCL Claim Fails. ...................................................23

    E.     Plaintiff's Unjust Enrichment Claim Fails................................23

VII.   PLAINTIFF'S CLAIMS ARE PREEMPTED BY THE NBDS....................24

VIII.  CONCLUSION .................................................................................25

<u>**TABLE OF AUTHORITIES**</u>

**Page(s)**

**Cases**

*Anunziato v. eMachines, Inc.*,
   402 F. Supp. 2d 1133 (C.D. Cal. 2005) ...................................................... 20

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) .................................................................... 7, 16

*Bailey v. Kind, LLC*,
   2016 WL 3456981 (C.D. Cal. 2016) ........................................................ 18

*Bates v. Kashi Company*,
   2012 WL 12847001 (C.D. Cal. 2012) .................................................... 21, 22

*Becerra v. Dr Pepper/Seven Up, Inc.*,
   2018 WL 3995832 (C.D. Cal. Aug. 21, 2018) ........................................ 13

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) .................................................................... 7, 16

*Boschetto v. Hansing*,
   539 F.3d 1011 (9th Cir. 2008) ................................................................ 6

*Bristol-Myers Squibb Co. v. Superior Court*,
   137 S. Ct. 1773 (2017).......................................................................... 8

*Brockey v. Moore*,
   107 Cal.App.4th 86 (2003) ................................................................... 19

*Carrea v. Dreyer's Grand Ice Cream, Inc.*,
   475 F. App'x 113 (9th Cir. 2012)........................................................ 11

*Cattie v. Wal-Mart Stores, Inc.*,
   504 F.Supp.2d 939 (S.D. Cal. 2007) .................................................... 18

*Chae v. SLM Corp.*,
   593 F.3d 936 (9th Cir. 2010)................................................................ 25

*Chamberlan v. Ford Motor Co.*,
   369 F. Supp. 2d 1138 (N.D. Cal. 2005)............................................... 23

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

USA01\12335624.7\C065376\2394559

DEFENDANTS' MOTION TO DISMISS FAC                    CASE NO. 3:17-CV-0592-WHO

*Charnay v. Cobert*,
    145 Cal. App. 4th 170 (2006) ............................................................. 22

*Chowning v. Kohl's Department Stores, Inc.*,
    733 Fed.Appx. 404 (9th Cir. July 31, 2018) ...................................... 18

*Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv.*,
    911 F.2d 242 (9th Cir. 1990) ............................................................. 21

*Cooper v. Pickett*,
    137 F.3d 616 (9th Cir. 1997) ......................................................... 7, 22

*Daimler AG v. Bauman*,
    134 S. Ct. 746 (2014) ...................................................................... 8, 9

*Dvora v. General Mills, Inc.*,
    2011 WL 1897349 (C.D. Cal. 2011) ................................................. 18

*Ebner v. Fresh, Inc.*,
    838 F.3d 958 (9th Cir. 2016) ............................................................. 12

*Epstein v. Wash. Energy Co.*,
    83 F.3d 1136 (9th Cir. 1996) ............................................................... 7

*Freeman v. Time, Inc.*,
    68 F.3d 285 (9th Cir. 1995) ............................................................... 23

*Gallagher v. Chipotle Mexican Grill, Inc.*,
    2016 WL 454083 (N.D. Cal. Feb. 5, 2016) .................................. 15, 17

*In re GlenFed, Inc. Sec. Litig.*,
    42 F.3d 1541 (9th Cir. 1994) (en banc) .............................................. 7

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
    564 U.S. 915 (2011) ............................................................................ 8

*Ham v. Hain Celestial Group, Inc.*,
    70 F. Supp. 3d 1188 (N.D. Cal. 2014) .......................................... 19, 22

*Hariston v. S. Beach Beverage*,
    2012 WL 1893818 (C.D. Cal. May 18, 2012) .................................... 10

*Hinesley v. Oakshade Town Ctr.*,
    135 Cal. App. 4th 289 (2005) ............................................................ 21

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

USA01\12335624.7\C065376\2394559

DEFENDANTS' MOTION TO DISMISS FAC                          CASE NO. 3:17-CV-0592-WHO

*Kane v. Chobani, Inc.*,
   2013 WL 5289253 (N.D. Cal. Sept. 19, 2013)......................................................10

*Kao v. Abbott Laboratories, Inc.*,
   2017 WL 5257041 (N.D. Cal. 2017).....................................................................24

*Kearns v. Ford Motor Co.*,
   567 F.3d 1120 (9th Cir. 2009).......................................................................7, 18

*In re: Kind LLC "Healthy and All Natural" Litigation*,
   209 F.Supp.3d 689 (2016).........................................................................17, 19

*Kwikset Corp. v. Superior Court*,
   51 Cal. 4th 310 (2011)...................................................................................18

*Lavie v. Procter & Gamble Co.*,
   105 Cal. App. 4th 496 (2003)..................................................................12, 14

*Lazar v. Superior Court*,
   12 Cal. 4th 631 (1996)...................................................................................21

*Lectrodryer v. SeoulBank*,
   77 Cal. App. 4th 723 (2000)...........................................................................23

*Letizia v. Facebook Inc.*,
   267 F. Supp. 3d 1235 (N.D. Cal. 2017)........................................................18

*Manchouck v. Mondelez Int'l, Inc.*,
   2013 WL 5400285 (N.D. Cal. 2013).............................................................12

*Mavrix Photo, Inc. v. Brand Tech., Inc.*,
   647 F.3d 1218 (9th Cir. 2011)..........................................................................6

*McKinnis v. Sunny Delight Beverages Co.*,
   2007 WL 4766525 (C.D. Cal. Sept. 4, 2007)...............................................12

*Pappas v. Chipotle Mexican Grill, Inc.*,
   No. 16CV612-MMA (JLB) (S.D. Cal. Aug. 31, 2016)......................13, 19, 22

*Pelayo v. Netsle USA, Inc.*,
   989 F. Supp. 2d 993 (9th Cir. 2013)........................................................10, 12

*Podpeskar v. Dannon Company, Inc.*,
   2017 WL 6001845 (S.D.N.Y. Dec. 3, 2017)..................................................15

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

*Reilly v. Chipotle Mexican Grill, Inc.*,
 711 Fed.Appx. 525 (2017)....................................................................18

*Rooney v. Cumberland Packing Corp.*,
 2012 WL 1512106 (S.D. Cal. 2012)....................................................13

*Schneider v. Chipotle Mexican Grill, Inc.*,
 2018 WL 4700353 (N.D. Cal. Sept. 29, 2018)....................................16

*Schwarzenegger v. Fred Martin Motor Co.*,
 374 F.3d 797 (9th Cir. 2004) ................................................................6

*Stiles v. Trader Joe's Co.*,
 2017 WL 3084267 (C.D. Cal. 2017) ...................................................12

*Stuart v. Cadbury Adams USA, LLC*,
 458 F. App'x 689 (9th Cir. 2011) ........................................................11

*Thurston v. Bear Naked, Inc.*,
 2012 WL 12845621 (C.D. Cal. 2012) ..................................................22

*In re Tobacco II Cases*,
 46 Cal.4th 298 (2009) ..........................................................................18

*Uyeda v. J.A. Cambece Law Office, P.C.*,
 2005 WL 1168421 (N.D. Cal.) ............................................................23

*Vess v. Ciba-Geigy Corp.*,
 317 F.3d 1097 (9th Cir. 2003) ........................................................7, 22

*Videtto v. Kellogg USA*,
 2009 WL 1439086 (E.D. Cal. May 21, 2009) .....................................13

*Viggiano v. Hansen Natural Corp.*,
 944 F. Supp. 2d 877 (C.D. Cal. May 13, 2013) ..................................10

*Werbel v. Pepsico, Inc.*,
 2010 WL 2673860 (N.D. Cal. 2010) ...................................................13

*Williams v. Beechnut Nutrition Corp.*,
 185 Cal. App. 3d 135 (1986) ...............................................................21

*Williams v. Gerber Prods. Co.*,
 552 F.3d 934 (9th Cir. 2008) ...............................................................10

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Zito v. Steeplechase Films, Inc.*,
   267 F.Supp.2d 1022 (N.D. Cal. 2003) .................................................. 22

**Statutes**

7 U.S.C.A. § 1639b ............................................................................... 11

7 U.S.C. § 1639b(b)(2)(A) ................................................................... 24

7 U.S.C. § 1639b(e) .............................................................................. 24

7 U.S.C. § 1639i ............................................................................. 24, 25

7 U.S.C. § 1639i(b) ........................................................................ 24, 25

15 U.S.C. § 1052(e)(1) ......................................................................... 14

Cal. Bus. & Prof. Code § 17200 ................................................. 6, 9, 23

Cal. Bus. & Prof. Code § 17204 .................................................... 17, 23

Cal. Bus. & Prof. Code § 17500 ........................................................ 6, 9

Cal. Bus. & Prof. Code § 17535 .......................................................... 17

Cal. Civ. Code § 1750 ............................................................................ 6

Cal. Civ. Code § 1770 ............................................................................ 9

Cal. Civ. Code § 1770(a)(5) ................................................................ 20

Cal. Civ. Code § 1770(a)(7) ................................................................ 20

Cal. Civ. Code § 1770(a)(9) ................................................................ 20

Cal. Civ. Code § 1770(a)(16) .............................................................. 20

Cal. Civ. Code § 1780 .......................................................................... 17

Cal. Civ. Code § 3333 .......................................................................... 22

Cal. Com. Code § 2313(a) ................................................................... 21

**Rules**

Fed. R. Civ. Proc. 8 ............................................................................... 6

Bryan Cave Leighton Paisner LLP
120 Broadway, Suite 300
Santa Monica, CA  90401-2386

Fed. R. Civ. Proc. 9(b) .......................................................................................*passim*

Fed. R. Civ. Proc. 12(b)(2) ...................................................................................6, 7

Fed. R. Civ. Proc. 12(b)(6) ...................................................................................6, 9

Fed. R. Civ. Proc. 56.................................................................................................4

Bryan Cave Leighton Paisner LLP
120 Broadway, Suite 300
Santa Monica, CA 90401-2386

# I.    **INTRODUCTION**

Dyami-Myers-Taylor ("Plaintiff") filed this action alleging that he bought butter labeled as "Natural" and made from "Milk From Grass-Fed Cows" and that he suffered some unspecified economic damage as a result of his allegation that the butter was made from milk which came from cows that may have consumed a small amount of grain.  In addition to his own claims, Plaintiff asserts claims on behalf of putative nationwide and California classes of individuals who also bought the butter in reliance on its labeling and advertising.

However, the First Amended Complaint ("FAC") that Plaintiff filed in response to defendants'[1] Motion to Dismiss fails entirely to cure the initial Complaint's defects.  The FAC contains only a smattering of additional information, none of which fills in the gaping holes in Plaintiff's vague and speculative allegations.  For example, one of the few additions Plaintiff made was to add three specific retail locations at which he allegedly purchased the butter products.  Yet Plaintiff still fails to specifically allege the essential facts necessary to support his causes of action, such as which labels or advertisements he relied upon, which butter products he actually purchased, or the amounts he allegedly paid as a price premium for those products.  Plaintiff does not even allege that he purchased all of the butter products, or if he only purchased some of them, which ones he purchased.  Each of these failures, individually, is fatal to his claims.

Moreover, Plaintiff cannot allege, let alone prove, that the labeling and advertising of the butter as "Natural" and made from "Milk From Grass-Fed Cows" was false.  He cannot allege, let alone prove, that the butter he purchased contained anything other than the two natural ingredients listed on the panel, "pasteurized

---

[1]   Defendants Ornua Foods North America, Inc. ("Ornua Foods") and Ornua Co-operative Limited ("Ornua Co-op") are collectively referred to here as "Ornua" or "Defendants."  Ornua Co-Op is an Irish agri-food cooperative that markets and sells dairy products on behalf of its members, Irish dairy processors and Irish dairy farmers.  RJN, Ex. B.  Ornua Co-Op is Ireland's largest exporter of dairy products and owns the Kerrygold butter brand.  *Id.*

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

cream, salt," or that the cream did not come from milk from Irish cows that in fact grazed on grass.

Plaintiff claims that butter from grass-fed cows provides health benefits due to its enriched nutrient content (claims not made on the product packaging). He fails to allege that milk from grass-fed cows that may also have consumed a small amount of grain does not contain those same nutrients, or that the butter he purchased did not contain those nutrients at the desired levels, or that he did not receive those benefits.

Finally, Plaintiff cannot demonstrate that other consumers share his unreasonable and implausible interpretation that "Milk From Grass-Fed Cows" means that the cows never consume anything but grass, or that consuming a little grain makes milk from the cows anything other than "Natural."  Plaintiff speculates that some of the grain might be bioengineered. However, as a matter of law under the legal definitions adopted by Congress as part of the National Bioengineered Food Disclosure Standards, and under prior court precedent, even if certain cows may have consumed such grain, milk from the cows is not bioengineered. Moreover, Plaintiff cannot identify which specific grains were bioengineered, or which cows consumed them, let alone connect milk from those particular cows to the specific butter products Plaintiff allegedly purchased.

All of these issues go to the implausibility and insufficiency of Plaintiff's allegations.  The FAC should be dismissed in its entirety.  And since Plaintiff's meager amendments demonstrate that further opportunity to amend would be futile, the dismissal should be with prejudice.

## II.   THE COMPLAINT'S ALLEGATIONS

### A.   The Challenged Claims, and Factual Background

Plaintiff's entire complaint is based on his allegation that labeling of certain

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA  90401-2386

Kerrygold butter products[2] is false, misleading and deceptive.  Specifically, Plaintiff alleges that Ornua's representations that the Butter Products are derived from "Milk From Grass-fed Cows,"®[3] "Made with milk from grass-fed cows not treated with rBST or other growth hormones," "All Natural," and "100% Pure and Natural" are false and deceptive.[4]  FAC ¶ 28.  Importantly, Plaintiff does not identify which of the Butter Products contain which claims,[5] which of the claims he relied upon, or which Butter Products he actually purchased.   Although the FAC challenges six products and their respective labels, Plaintiff only provides specific allegations and images of one of those products (Pure Irish Butter).[6] FAC ¶ 32

Plaintiff does not challenge any particular ingredient of the Butter Products as unnatural.  In fact, the ingredients panels disclose the primary ingredients of the Butter Products as "pasteurized cream" and "salt."[7]  RJN, Ex. A.  Instead, Plaintiff alleges that "[d]uring certain times of the year, Kerrygold feeds its cows genetically modified and other grains – not grass – such that the resulting products are not strictly 'grass-fed.'"  FAC ¶ 29.  Plaintiff further alleges that "[t]he existence of genetically modified and other grains in the diets of Kerrygold cows undermines the

---

[2]   These Kerrygold butter products include Salted Butter, Unsalted Butter, Naturally Softer Pure Irish Butter, Garlic & Herb Butter, Reduced Fat Irish Butter, and Irish Butter With Canola Oil (the "Butter Products").  FAC ¶ 8.

[3]   "Milk From Grass-fed Cows" is a registered trademark of Ornua Co-Op.  RJN, Ex. F.

[4]   The first two claims are referred to throughout this Motion as the "Grass-Fed Claims" and the last to claims are referred to as the "Natural Claims."

[5]   Ornua has not used the phrase "100% Pure and Natural" on the Butter Products.  Some of the Butter Products use the term "Pure" on the packaging, and "Natural" appears on the website descriptions of some of the Butter Products.

[6]   For the Court's convenience, Ornua has provided copies of current website images of the packaging and labeling of the Butter Products.  Request for Judicial Notice ("RJN") Ex. A.

[7]   The only additional ingredients are that the Irish Butter With Canola Oil includes canola oil, and the Garlic & Herb Butter includes the following herbs: chives, parsley, garlic, dill, pepper, and paprika.  RJN, Ex. A.

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

health benefits of grass-fed butter and has not been disclosed to Plaintiff and the Proposed Class, …" FAC ¶ 34.

The Butter Products are manufactured entirely in Ireland.  RJN, Ex. B.[8]  All of the milk used in production of the Butter Products also comes from Ireland, *Id.*, and the milk generally comes from cows in the Republic of Ireland that spend an average of 305 days a year grazing on fresh grass, RJN, Ex. C, and grass typically accounts for 90 to 95 percent of their diet.  RJN, Ex. D.  In addition, Irish law prohibits the use of growth hormones such as rBST on dairy cows.  RJN, Ex. E.

## B.   Alleged Changes to the Kerrygold Websites

Plaintiff's amended complaint adds an allegation that as of January 8, 2015, Kerrygold's U.S. website disclosed that "[t]he vast majority of [a Kerrygold] cow's diet, almost 90%, is from rich, natural grass" and that "about 10% of the cow's diet is made up of grain and supplements," of which about 25% may be from GM sources," for a total of "approximately 3% of a cow's typical annual diet" from GM sources.  FAC ¶ 26, FN 1.  Plaintiff contrasts this with Kerrygold's U.K. website from **three years later**, as of January 6, 2018, which he alleges stated that "[a]lmost 85 per cent of [a Kerrygold] cow's diet is from rich, natural grass …"  FAC ¶ 26.

Plaintiff relies upon this 5 percent difference over the course of three years, and the fact that Kerrygold's U.S. website no longer includes this information, to argue that "grass-fed" is somehow false and misleading.  *Id.*  Importantly, Plaintiff does not allege that he or any other class member read or relied upon these website representations.  *See generally* FAC.  If he did, then he certainly knew that the cows supplying milk for the Butter Products were not exclusively grass-fed.  And a 5 percent variance over the course of three years is not likely material, could merely

---

[8]   Ornua requests that the Court take judicial notice of the facts contained in its Request for Judicial Notice.  If, however, in the Court's discretion, consideration of any such facts will require conversion of the instant Motion to a motion for summary judgment under Fed. Rul. Civ. Proc. Rule 56, then Ornua withdraws the Request for Judicial Notice and asks that the Court not convert the Motion.

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA  90401-2386

1  reflect updated statistical information, and certainly does not demonstrate that
2  "grass-fed" is false or misleading.   Regardless of whether 85 percent or 90 percent
3  of the cows' diet is from grass, the cows are still grass-fed.

4  **C.**      **Plaintiff's Alleged Health Benefits From Grass-Fed Butter**

5  The FAC contains a long recitation of the health benefits of butter from grass-
6  fed cows, for example, inclusion of "400 fatty acids and a healthy quantity of fat-
7  soluble vitamins." FAC ¶ 18.  Nowhere does Plaintiff allege that Ornua made any
8  representations regarding the alleged health benefits of the Butter Products, either on
9  the product labels or on its website.  Plaintiff also fails to allege that the Butter
10  Products do not contain the enriched nutrient levels or provide the health benefits
11  that he allegedly assumed.

12  **D.**      **Advertising of the Butter Products**

13  Plaintiff alleges that the challenged claims "are printed on labels affixed to
14  the Kerrygold Products, on advertising materials, and on Kerrygold's public
15  website." FAC ¶ 27.  Again, he fails to allege which claims he relied upon, stating
16  only that "Plaintiff saw and read the Grass-Fed Claims on product packaging and
17  relied on the representations, statements, and warranties thereon and on the
18  Kerrygold website …" FAC ¶ 5.  Plaintiff also alleges that images on Kerrygold's
19  website of cows in green pastures, with statements such as "The Grass Really is
20  Greener Over Here" and "Our Happy Grass-Fed Cows" are "intended to convey to
21  the Plaintiff and similarly situated consumers the false impression that the
22  Kerrygold Products are derived from cows that are 100% grass fed." FAC ¶ 33.
23  Plaintiff alleges that he viewed the website "at one time or another." FAC ¶ 28.

24  **E.**      **Purchase of the Butter Products and Damages**

25  Plaintiff alleges that he purchased the Butter Products during the time period
26  2014 through 2018 from stores located in Los Angeles, Orange and San Diego
27  counties  (FAC ¶¶ 4, 31), and that he and other class members "paid a premium for
28  Kerrygold Products in reasonable reliance on the Grass-Fed Claims." FAC ¶ 26.

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA  90401-2386

USA01\12335624.7\C065376\2394559

DEFENDANTS' MOTION TO DISMISS FAC                                    CASE NO. 3:18-CV-01538-H-MDD

1   Plaintiff still fails to allege the specific price premium that he allegedly paid.

2   Despite Ornua's identification of this deficiency in its initial Motion, Plaintiffs'

3   amended pleading alleges only that "[t]he Kerrygold Products cost more than other

4   similar products that do [sic] have misleading labeling, statements, and

5   representations." FAC ¶ 33. Moreover, Plaintiff does not even allege that he

6   purchased all of the Butter Products, or if he purchased only some, which ones he

7   purchased, and the price differential as to "other similar products."

8          **F.**    **The Conclusory Causes of Action Asserted**

9        Plaintiff asserts causes of action for violation of (1) the California Consumer

10   Legal Remedies Act, Civ. Code §§ 1750, *et seq.* ("CLRA"); (2) California's False

11   Advertising Law, Bus. & Prof. Code §§ 17500, *et seq.* ("FAL"); (3) breach of

12   express warranty; (4) fraud; (5) negligent misrepresentation; (6) violation of

13   California's Unfair Competition Law, Bus. & Prof. Code §§ 17200, *et seq.*

14   ("UCL"); and (7) unjust enrichment. Plaintiff and the putative class seek

15   unspecified damages and other relief. Prayer for Relief.

16   **III.**   **LEGAL STANDARD**

17        Rule 12(b)(2) permits a defendant to move to dismiss a complaint for lack of

18   personal jurisdiction. Fed. R. Civ. P. 12(b)(2). Once such a motion is made, the

19   plaintiff bears the burden of establishing that jurisdiction is proper. *Boschetto v.*

20   *Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008). While "uncontroverted allegations

21   in the complaint must be taken as true," *Mavrix Photo, Inc. v. Brand Tech., Inc.*, 647

22   F.3d 1218, 1223 (9th Cir. 2011), a plaintiff cannot "simply rest on the bare

23   allegations of the complaint," *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d

24   797, 800 (9th Cir. 2004).

25        A motion to dismiss may also be brought under Rule 12(b)(6) where the

26   complaint fails to state a claim upon which relief can be granted. Plaintiff must

27   satisfy two separate pleading standards. First, under Rule 8, Plaintiff must set forth

28   the ***facts*** that constitute the grounds of his entitlement to relief. Meeting this burden

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

"requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  The allegations, taken as true, must be "enough to raise a right to relief above the speculative level." *Id.* at 555.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "[C]onclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim." *Epstein v. Wash. Energy Co*., 83 F.3d 1136, 1140 (9th Cir. 1996).

Second, Rule 9(b) applies to claims grounded in fraud, and requires pleading with even more particularity: The complaint must allege, in detail, "the who, what, when, where, and how" of the alleged fraudulent conduct, *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997), and "set forth an explanation as to why the statement or omission complained of was false or misleading." *In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1548 (9th Cir. 1994) (en banc).  Rule 9(b) governs claims that allege fraudulent conduct or "sound in fraud" even if fraud is not a required element of the claims.  *Kearns v. Ford Motor Co*., 567 F.3d 1120, 1125 (9th Cir. 2009); *Vess v. Ciba-Geigy Corp*., 317 F.3d 1097, 1102 (9th Cir. 2003).  This is true of state law claims, such as those under the UCL, CLRA, and FAL, that are grounded in fraud. *Vess v. Ciba–Geigy Corp. USA*, 317 F.3d 1097, 1103, 1106 (9th Cir. 2003) (quotation marks omitted).  Rule 9(b) therefore governs all of Plaintiff's claims here.

## IV.   THE NATIONWIDE CLASS CLAIMS SHOULD BE DISMISSED UNDER RULE 12(b)(2) FOR LACK OF PERSONAL JURISDICTION.

Plaintiff has not alleged, and cannot, the necessary nexus of activity with California for specific personal jurisdiction regarding the Defendants as to the non-California members of the putative nationwide class. Specific jurisdiction is warranted only when a claim "arises out of or relates to the defendant's contact with the forum." *Daimler AG v. Bauman*, 134 S. Ct. 746, 749 (2014).  In other words,

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

1   there must be "an affiliation between the forum and the underlying controversy,

2   principally, [an] activity or an occurrence that takes place in the forum State and is

3   therefore subject to the State's regulation." *Goodyear Dunlop Tires Operations,*

4   *S.A. v. Brown*, 564 U.S. 915, 919 (2011).  "When no such connection exists, specific

5   jurisdiction is lacking regardless of the extent of a defendant's unconnected

6   activities in the State." *Bristol-Myers Squibb Co. v. Superior Court*, 137 S. Ct.

7   1773, 1776 (2017).[9]

8       In *Bristol-Myers Squibb,* a group of plaintiffs – 86 California residents and

9   592 non-California residents – brought suit in California against Bristol-Myers

10  Squibb ("BMS"), which is incorporated in Delaware and headquartered in New

11  York.  *Id.* at 1778.  The plaintiffs alleged injuries caused by a defective

12  pharmaceutical drug manufactured by BMS, but the non-California plaintiffs did not

13  allege that they obtained or were injured by the drug in California.  *Id.*  Moreover,

14  while BMS runs five research and laboratory facilities, employs over 400 workers,

15  and sells the challenged drug in California, BMS did not develop, create a marketing

16  strategy for, manufacture, label, or package the challenged drug in California.  *Id.*

17  The Supreme Court held that the evidence of BMS's activity in California was

18  insufficient to confer general jurisdiction, and went on to hold that specific

19  jurisdiction over the non-resident plaintiffs' claim was lacking because "[t]he mere

20  fact that other plaintiffs were prescribed, obtained, and ingested [the challenged

21  drug] in California—and allegedly sustained the same injuries as did the

22  nonresidents—does not allow the State to assert specific jurisdiction over the

23  nonresidents' claims." *Id.* at 1781.

24      Here, Plaintiff's claims are even more tenuously connected to any activities of

25  Ornua Foods or Ornua Co-Op in California than the claims at issue in *Bristol-Myers*

26

27  _____

    [9] To the extent necessary or beneficial to the Court, Defendants incorporate by
       reference additional citations and arguments regarding jurisdiction from the
28     initial Motion to Dismiss, Docket No. 9, pp. 6-8.

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA  90401-2386

*Squibb*.  Plaintiff does not even attempt to make a case for general jurisdiction: the only jurisdictional allegation specific to Ornua Foods is that it is a New York corporation with its headquarters in Evanston, Illinois.  FAC ¶6.  Plaintiff concedes that Ornua Co-Op is an Irish company with his headquarters in Dublin, Ireland.  FAC ¶7.  Otherwise, Plaintiff simply alleges in vague and conclusory terms that "Defendant conduct [sic] business in California"  and "marketed, promoted, distributed, and sold the Kerrygold Products in California."  FAC ¶16.

Such allegations are insufficient to support specific jurisdiction under *Bristol-Myers Squibb* as to the nationwide class claims.  The complaint does not allege, and there is no basis to presume, that non-California class members received advertising or marketing materials created in or utilized in California. Nor that non-California class members purchased or used the Butter Products in California.  In short, the complaint lacks any allegations that suggest that the claims of the non-California class members "arise[] out of or relate[] to [Defendants'] contacts with" the forum state of California.  *Daimler*, 134 S. Ct. at 749.  Plaintiff's amended complaint fails to cure this defect or to allege any additional facts that would support exercise of specific jurisdiction as to the nationwide class claims.  Accordingly, all of the claims by the nationwide class asserted against Defendants should be dismissed.

## V.   THE COMPLAINT SHOULD BE DISMISSED UNDER RULE 12(b)(6).

### A.   Plaintiff Cannot Plausibly Allege A False Or Misleading Statement.

Each of Plaintiff's causes of action requires him to allege a false or misleading statement that is likely to deceive a reasonable consumer.  California's CLRA prohibits "unfair methods of competition and unfair or deceptive acts or practices."  Civ. Code § 1770.  California's FAL prohibits any "unfair, deceptive, untrue or misleading advertising." Bus. & Prof. Code § 17500.  California's UCL prohibits "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising."  Bus. & Prof. Code § 17200.  Under these statutes, conduct is deceptive or misleading if it is likely to deceive an ordinary

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA  90401-2386

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

1  consumer. *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008).

2  Plaintiff cannot allege a false or misleading statement in violation of these statutes.

### 1.  The Grass-Fed Claims Are Not False or Misleading.

4  The Grass-Fed Claims are not false, misleading or deceptive. The Butter

5  Products are all manufactured in Ireland, RJN Ex. B, which also supplies all of the

6  milk for the Products. *Id.* Cows in Ireland spend an average of 305 days a year

7  grazing on fresh grass and get at least 90 to 95 percent of their nutrients from fresh

8  grass. RJN Exs. C, D. Irish law prohibits use of rBST or other growth hormones on

9  dairy cows. RJN Ex. E. Therefore, there can be no real dispute that the cows

10  supplying milk for the Products are "grass fed" and "not treated with rBST or other

11  growth hormones."

### 2.  The Natural Claims Are Not False or Misleading.

13  Likewise, there is also nothing false, misleading or deceptive about the

14  Natural Claims, as demonstrated by the ingredients panels for the Butter Products.

15  "In cases where a product's front label is accurate and consistent with the statement

16  of ingredients, courts routinely hold that no reasonable consumer could be misled by

17  the label, because a review of the statement of ingredients makes the composition of

18  the food or drink clear." *Viggiano v. Hansen Natural Corp.*, 944 F. Supp. 2d 877,

19  892 n.38 (C.D. Cal. May 13, 2013); *Kane v. Chobani, Inc.*, 2013 WL 5289253, at

20  *10 (N.D. Cal. Sept. 19, 2013) ("[b]ecause the labels clearly disclose the presence of

21  the [allegedly unnatural ingredients] it is not plausible that Plaintiffs believed ... that

22  the [product] did not contain" them); *Pelayo v. Nestle USA, Inc.*, 989 F. Supp. 2d

23  973, 978 (9th Cir. 2013) ("any ambiguity regarding the definition of 'All Natural' . . .

24  is clarified by the detailed information contained in the ingredient list."); *Hariston v.*

25  *S. Beach Beverage*, 2012 WL 1893818, at *5 (C.D. Cal. May 18, 2012) ("the

26  ingredient list is consistent with the front label statement"). The ingredients panels

27  for the Butter Products disclose that, for the most part, they include only two

28  ingredients: pasteurized cream and salt. These are not the types of ingredients

typically challenged as "unnatural," and Plaintiff does not do so here.

Instead, Plaintiff's claims all rely on his theory that if the cows consume any amount of grains, which may include GMO grains, their milk is somehow rendered "unnatural." Plaintiff's idiosyncratic interpretation that "Milk From Grass-fed Cows" and "Natural" means milk from cows that *only* consume grass, and never grains, defies common sense. The Ninth Circuit has stated common sense should be applied in resolving false advertising and labeling cases at the pleading stage. *Carrea v. Dreyer's Grand Ice Cream, Inc.,* 475 F. App'x 113, 115 (9th Cir. 2012) ("[i]t is implausible that a reasonable consumer would interpret 'Original Sundae Cone,' 'Original Vanilla,' and 'Classic,' to imply that [the defendant's product] is more wholesome or nutritious than competing products"); *Stuart v. Cadbury Adams USA, LLC*, 458 F. App'x 689, 690-691 (9th Cir. 2011) (affirming district court's conclusion that plaintiff's claims "defy common sense").

As demonstrated below, Plaintiff's interpretation of both the Grass-Fed and Natural claims is inconsistent with federal law and is not based on any legal or objective definition, is implausible and unlikely to be shared by reasonable consumers, and has been rejected by several courts to consider the issue.

### 3.  Plaintiff's Interpretation Conflicts With Federal Law.

Congress has passed the National Bioengineered Food Disclosure Standards ("NBFDS"), which reject the logic underlying Plaintiff's claims. The NBFDS does not require the labeling of dairy products as bioengineered where the cows may have consumed bioengineered feed. 7 U.S.C.A. § 1639b (prohibiting "a food derived from an animal to be considered a bioengineered food because the animal consumed feed produced from, containing, or consisting of a bioengineered substance"). Plaintiff's interpretation of "Grass-Fed" and "Natural" flies in the face of the reasoning and the science underlying the NBDS, would undermine its express exclusion of such dairy products from GMO labeling requirements, and, as discussed below, is therefore preempted.

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA  90401-2386

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

### 4. Plaintiff's Interpretation Fails Reasonable Consumer Test.

Plaintiff's interpretation also fails the "reasonable consumer" test, which requires a showing that "members of the public are likely to be deceived." *Ebner v. Fresh, Inc.*, 838 F.3d 958, 965 (9th Cir. 2016). The reasonable consumer standard requires a probability "that a significant portion of the general consuming public or of targeted consumers, acting reasonably under the circumstances, could be misled." *Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th 496, 508 (2003). "'Likely to deceive' implies more than a mere possibility that the advertisement might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner." *Stiles v. Trader Joe's Co.*, 2017 WL 3084267, at *3 (C.D. Cal. 2017), quoting *Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th 496, 506 (2003). The test "requires a probability that a significant portion of the general consuming public or of targeted consumers, acting reasonably under the circumstances could be misled." *Pelayo*, 989 F. Supp. 2d at 977–78.

In applying the reasonable consumer test, courts focus on whether there is a "plausible objective definition" of the challenged phrase or term, or that the plaintiff's subjective definition is "shared by the reasonable consumer." *Id.* at 978. In *Pelayo*, for example, the district court granted the defendant's motion to dismiss because the plaintiff had not shown "how the term 'All Natural' could be deceptive to a consumer acting reasonably under the circumstances." The court stated that "the reasonable consumer is aware that [defendant's pasta products] are not springing fully formed from Ravioli trees and Tortellini bushes." *Id.* at 978.

Accordingly, district courts have routinely granted motions to dismiss in cases where, as here, the plaintiff's allegations are simply implausible. *See, e.g., Manchouck v. Mondelez Int'l, Inc.*, 2013 WL 5400285, at *2 (N.D. Cal. 2013) ("Plaintiff has not plausibly alleged why the statement `made with real fruit' would not include mechanically separated fruit puree."); *McKinnis v. Sunny Delight Beverages Co.*, 2007 WL 4766525, at *4 (C.D. Cal. Sept. 4, 2007) ("no reasonable

consumer ... would conclude Defendant's products contain significant quantities of fruit or fruit juice"); *Werbel v. Pepsico, Inc.,* 2010 WL 2673860 (N.D. Cal. 2010) (no reasonable consumer would be led to believe that "Cap'n Crunch's Crunch Berries" cereal contained real fruit berries); *Videtto v. Kellogg USA*, 2009 WL 1439086, at *3 (E.D. Cal. May 21, 2009) (dismissing, without leave to amend, CLRA, FAL and UCL claims because no reasonable consumer would believe that "Froot Loops" cereal contained real fruit); *Becerra v. Dr Pepper/Seven Up, Inc.*, 2018 WL 3995832, at *7 (C.D. Cal. Aug. 21, 2018) (granting motion to dismiss without leave to amend where plaintiff failed to plausibly demonstrate reasonable consumers were misled into believing "diet" soda would promote weight loss); *Pappas v. Chipotle Mexican Grill, Inc.*, No. 16CV612-MMA (JLB), Order Granting in Part and Denying in Part Defendant's Motion to Dismiss [Dkt. 15], at 13 (S.D. Cal. Aug. 31, 2016) ("Plaintiff's subjective definition of 'non-GMO' is implausible and Plaintiff has failed to demonstrate a likelihood that a significant portion of the general consuming public or of targeted customers, acting reasonably in the circumstances would be misled"). Here, similarly, there is no objective definition of the phrases "Milk From Grass-fed Cows" or "Natural." Plaintiff's idiosyncratic interpretation is just as implausible as all those that resulted in dismissal above.

Notably, in *Rooney v. Cumberland Packing Corp.*, 2012 WL 1512106 (S.D. Cal. 2012), this Court applied the reasonable consumer test to grant the defendant's motion to dismiss where it concluded that "a reasonable consumer could not be led to believe that Sugar in the Raw contains unprocessed and unrefined sugar." *Id.* at *4. In doing so, the Court noted that the plaintiff's inference that raw sugar is unprocessed and unrefined was not supported by the packaging of Sugar in the Raw, the marketing of the product, or industry standards. *Id.* The packaging of Sugar in the Raw did not state that the product was "raw"; aside from the brand name, the word "raw" did not appear on the packaging. *Id.* Rather, the product was repeatedly described as turbinado sugar. *Id.* Additionally, the Court noted that the

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA  90401-2386

defendant's trademark on Sugar in the Raw had existed without contest for forty years, and that as a prerequisite to acquiring a trademark registration in the United States, a mark must not be deceptively misdescriptive of the product.  15 U.S.C. § 1052(e)(1).  Therefore, the Court concluded that "[t]o the extent that Plaintiff asserts that she was under the belief that the product contained raw sugar, she was not deceived.  Given the clear labeling of Defendants' product as turbinado sugar ... , Plaintiff's allegations are without merit."  *Id.*  "A significant portion of the general consuming public, acting reasonably in the circumstances, would not be misled by Sugar in the Raw."  *Id.* citing *Lavie,* 105 Cal. App. 4th at 508.

Here, just as in *Rooney*, Plaintiff's interpretations of the Grass-Fed and Natural claims fail the reasonable consumer test.  The cows that supply cream for the Butter Products *do* consume fresh grass.  Nothing about the way the Butter Products are packaged or marketed would lead a reasonable consumer to believe that the cows are *exclusively* grass-fed.  This representation does not appear anywhere on the packaging of the Butter Products, on the Kerrygold website, or in Defendants' marketing materials.  Just as in *Rooney*, Ornua has a trademark on the phrase "Milk From Grass-Fed Cows" that was determined by the U.S. Patent and Trademark Office to not be deceptively misdescriptive of the Butter Products.  RJN Ex. F.  Just as in *Rooney,* reasonable consumers are unlikely to share the Plaintiff's interpretation that "Grass-fed" and "Natural" mean the products "are produced from cows that have not been fed anything other than grass."[10]  FAC ¶ 53.  Plaintiff's amended complaint does not cure this defect by alleging any additional facts indicating that reasonable consumers would share this implausible interpretation.

### 5.  **Plaintiff's Implausible Interpretations and Theories Have Been Rejected by Several Courts to Consider Them.**

---

[10]  Moreover, even if the claim survives, which it should not, the investigation and determination of "reasonable consumer" standard for the putative class will devolve into individualized inquiries which will predominate and swamp any purported common issues.

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA   90401-2386

For all of the reasons above, the theories on which Plaintiff's causes of action are based have been soundly rejected by several courts to consider them. *Podpeskar v. Dannon Company, Inc.*, 2017 WL 6001845 (S.D.N.Y. Dec. 3, 2017) is directly on point. In that case, the plaintiff alleged violation of various Minnesota and other state-law claims based on labeling of yogurt products as "Natural." *Id.* at *1. The plaintiff alleged that reasonable consumers would not deem the products to be "Natural" if they knew that the products contained milk derived either from cows that are fed crops made from GMOs, or cows raised using hormones and certain milk production methods. *Id.* Notably, just as here, Dannon did not specifically represent that its products were GMO free. *Id.* at *5.

Like Plaintiff here, "[t]he nub of Podpeskar's claims was simply that yogurt is made from milk, and that – today – most milk is made from cows that consume feed of a particular type, and who are subjected to certain animal husbandry practices." *Id.* at *4. Podpeskar alleged very little about Dannon's specific practices.[11] Instead, her argument was predicated on "her own speculation that if the cows that produced the milk that Dannon used to make its yogurt ate food with GMOs or were fed antibiotics, that their milk is necessarily not natural, nor is the yogurt that is made from it." *Id.* The court held that "[t]here is no legal support for the idea that a cow that eats GMO feed or is subjected to hormones or various animal husbandry practices produced 'unnatural' products." *Id.* at *5. The court concluded that plaintiff's arguments were "too speculative to state a plausible claim."

The Northern District of California reached the same conclusion in an earlier case, *Gallagher v. Chipotle Mexican Grill, Inc.*, 2016 WL 454083 (N.D. Cal. Feb. 5, 2016). There, the plaintiff argued that "Defendant serves meat products that come from animals which feed on GMOs, including corn and soy" and argued that "the

---

[11] In support of her claims, Podpeskar relied on articles alleging facts and statistics about the use of GMOs and animal husbandry practices generally. Here, Plaintiff's interpretation of the Grass-Fed and Natural claims is completely bereft of any factual support.

reasonable consumer would interpret 'non-GMO' to mean meat and dairy ingredients produced from animals that never consumed any genetically modified substances." *Id.* at *4. The district court rejected this argument. *Id.*

The court relied on the fact that the plaintiff could not allege that, although derived from cows that may have consumed genetically modified grains, that the meat and dairy products themselves "have 'been altered using ... genetic engineering techniques.'" *Id.* The court noted that "there is no allegation that the animals from which [Chipotle's] meat and dairy ingredients were produced were genetically modified." *Id.* Rather, the plaintiff alleged that the reasonable consumer would interpret "non-GMO ingredients" to mean "meat and dairy ingredients produced from animals that never consumed any genetically modified substances." *Id.* Finding the plaintiff's interpretation of Chipotle's advertising to be implausible as a matter of law, the court stated that the case presented "'the rare situation in which granting a motion to dismiss is appropriate.'" *Id.* at *4.[12]

Here, as in *Podpeskar* and *Gallagher,* the Plaintiff fails to plausibly and particularly allege that a reasonable consumer would share his conclusory and idiosyncratic interpretation of the Grass-Fed and Natural claims as meaning that the cows never consume anything but grass, and never any grains, no matter how seldom or small an amount. The amended complaint offers no additional evidence

---

[12] Although the district court came to a different decision in *Schneider v. Chipotle Mexican Grill, Inc.*, 2018 WL 4700353 (N.D. Cal. Sept. 29, 2018) (denying defendant's motion for summary judgment, and granting class certification), that case is distinguishable. In *Schneider*, the court relied at the summary judgment stage on affirmative Chipotle representations that its products were "non-GMO" and "GMO free" and on the fact that those representations had been posted in store locations. *Id.* at *1. Ornua has made no such representations as to the Butter Products. The court also relied on plaintiffs' factual evidence, which the court determined supported "the plausibility of their interpretation" of Chipotle's non-GMO and GMO-free claims, including definitions used by the Non-GMO Project, as well as market research and consumer surveys. *Id.* at *6. Here, Plaintiff offers no plausible factual allegations, and no supporting evidence whatsoever, for his unreasonable and implausible interpretation of the Grass-Fed and Natural claims. *Twombly,* 550 U.S. at 678; *Iqbal*, 556 U.S. at 678.

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

that a reasonable consumer would share this interpretation.  *See generally* FAC.

Even if consuming some GMO grain could somehow render milk from those cows as "unnatural" (it does not), Plaintiff cannot trace that GMO grain to any particular cows, or trace milk from those cows to the Butter Products, let alone to any particular products purchased by Plaintiff.  The *Gallagher* district court held this was fatal to the plaintiff's claims:  "Plaintiff has not adequately alleged any resulting economic injury [because] it is not clear that Plaintiff purchased any products that, by her definition, are made with ingredients containing GMOs."  *Id.* at *2.  Similarly, in *In re: Kind LLC "Healthy and All Natural" Litigation*, 209 F.Supp.3d 689 (2016), the district court granted the defendant's motion to dismiss because "while Plaintiffs allege that 'testing has detected the presence of GMOs in at least some [KIND] products,' their failure to specify which products included GMOs and whether they actually purchased those products renders their allegations insufficient."  *Id.*at 697-698.  Here, Plaintiff has not even confirmed the presence of GMOs in any of the Butter Products, let alone any products that he purchased.

For all of the reasons above, Plaintiff's causes of action should be dismissed. And since Plaintiff's meager amendments demonstrate that he cannot cure his pleading's deficiencies by further amendment, dismissal should be with prejudice.

### B.   Plaintiff Cannot Satisfy Standing Requirements by Alleging Reliance, Causation and Damages With Rule 9(b) Specificity.

Plaintiff cannot meet the standing requirements to state a cause of action for fraud, negligent misrepresentation, or violation of the UCL, FAL, and CLRA. Plaintiff has not "suffered injury in fact" and has not "lost money or property as a result of" alleged unfair competition or false advertising.  Cal. Bus. & Prof. Code §§ 17204 (UCL), 17535 (FAL).  The CLRA similarly requires a consumer to have "suffer[ed] … damages as a result of" a violation of the statute.  Cal. Civ. Code § 1780.  Plaintiff bought and received natural butter from cows that grazed grass.

In addition, all of Plaintiff's causes of action require him to demonstrate that

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA  90401-2386

DEFENDANTS' MOTION TO DISMISS FAC                                     CASE NO. 3:18-CV-01538-H-MDD

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

he actually relied on the alleged misrepresentations. *In re Tobacco II Cases*, 46 Cal.4th 298, 306 (2009); *Cattie v. Wal-Mart Stores*, *Inc.,* 504 F.Supp.2d 939, 946-47 (S.D. Cal. 2007) (actual reliance required for standing to sue for fraud, negligent misrepresentation and under the CLRA, FAL, and UCL); *Dvora v. General Mills, Inc.*, 2011 WL 1897349, at \*9 (C.D. Cal. 2011) (actual reliance required for express warranty claim). If the alleged misrepresentation is not "material," then the consumer got the "benefit of the bargain," and lacks standing. *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 332-33 (2011).

All of Plaintiff's causes of action sound in fraud, under Federal Rule of Civil Procedure 9(b). Plaintiff therefore must plead reliance, causation and damages with sufficient specificity. *Kearns v. Ford Motor Co.,* 567 F.3d 1120, 1125 (9th Cir. 2009) (holding that Rule 9(b) applies to UCL, FAL, and CLRA claims arising from a "unified course of fraudulent conduct"); *Letizia v. Facebook Inc.*, 267 F. Supp. 3d 1235, 1244 (N.D. Cal. 2017) (noting that allegations of actual reliance are subject to "Rule 9(b)'s heightened pleading requirements").

And since Plaintiff's case is predicated on a "price premium" theory, he must allege with particularity the actual price differential paid due to the alleged misrepresentation. *Bailey v. Kind, LLC*, 2016 WL 3456981, at \*6 (C.D. Cal. 2016); *In re Vioxx Class Cases,* 180. His inability to do so, and inability to allege that he received no value from the Butter Products, is fatal to his claims. *Reilly v. Chipotle Mexican Grill, Inc.*, 711 Fed.Appx. 525, 526 (2017). In *Reilly,* for example, the Eleventh Circuit affirmed summary judgment for Chipotle on grounds the plaintiff "suffered no actual loss" as a result of Chipotle's non-GMO claims because the plaintiff could not demonstrate that she paid a specific price premium, and testified that the food she had consumed was not worthless. *See also Chowning v. Kohl's Department Stores, Inc.*, 733 Fed.Appx. 404, 406 (9th Cir. July 31, 2018) (affirming summary judgment for Kohl's because the class plaintiff could not prove the "value received" in a comparative advertising case, rendering calculation of restitution

damages "impossible"  This case should similarly result in dismissal.  Plaintiff has not, and cannot, allege the price premium he actually paid, or that he received no value from the Butter Products.

Plaintiff's failure to specify what advertisements he read and relied upon, if other than the butter packaging, is also fatal to his claims. In *In re: Kind LLC "Healthy and All Natural" Litigation*, 209 F.Supp.3d 689 (2016), the district court granted the defendant's motion to dismiss because "no plaintiff alleges that they read and relied on the 'non-GMO' labeling statement prior to purchasing the products." *Id.* at 697-698.  In another similar putative false advertising class action, *Pappas v. Chipotle Mexican Grill, Inc.*, No. 16CV612-MMA (JLB), at 13 (S.D. Cal. Aug. 31, 2016), the plaintiff alleged violation of California's CLRA, FAL and UCL based on an advertising campaign making a number of non-GMO representations, including on television, online, print, billboard and in-store advertisements. However, the district court held that the plaintiff failed to satisfy the specificity requirements of Rule 9(b) as to most of these ads, because she only alleged that she read and relied upon in-store ads.  The court stated that "it is particularly important that Plaintiff state which representation(s) she saw and relied on because 'the primary evidence in a false advertising case is the advertising itself.'" *Id.* quoting *Brockey v. Moore*, 107 Cal.App.4[th] 86, 100 (2003).

The court held that "[b]ecause Plaintiff does not adequately plead that she saw or relied on any other representations, Plaintiff does not adequately demonstrate she has standing to challenge other representations. 'A party does not have standing to challenge statements or advertisements that she never saw.'" *Id.* quoting *Ham v. Hain Celestial Group, Inc.*, 70 F. Supp. 3d 1188, 1197 (N.D. Cal. 2014).  Since the plaintiff failed to allege more specifically in her amended complaint which advertisements she actually read and relied upon, the court granted Chipotle's motion to dismiss as to all the other advertising claims, with prejudice.

The same result should occur here.  As noted, the product labels are accurate.

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA  90401-2386

USA01\12335624.7\C065376\2394559

DEFENDANTS' MOTION TO DISMISS FAC                                    CASE NO. 3:18-CV-01538-H-MDD

Plaintiff offers no other advertisements that are allegedly false. Despite having an opportunity to amend, Plaintiff still fails to allege which claims he allegedly read and relied upon, which Butter Products he actually purchased, the specific price premiums he allegedly paid, or that the Butter Products, or any individual product, do not contain all of the sought-after nutrients, or at the enriched levels, for which Plaintiff and others in the class allegedly paid a premium.

## VI.   PLAINTIFF'S INDIVIDUAL CAUSES OF ACTION EACH FAIL.

### A.   Plaintiff's CLRA and FAL Claims Fail.

Plaintiff asserts violation Civil Code Sections 1770(a)(5),(7),(9) and (16) of the CLRA.  FAC ¶¶ 53-56.  Plaintiff also asserts violation of the FAL.

Both the CLRA and the FAL require a false or misleading statement.  As with all of Plaintiff's claims, his CLRA and FAL claims fail because Plaintiff cannot plausibly and particularly allege a false or misleading statement.  The Irish cows ate a substantial diet of grass, and the two listed Butter Product ingredients, pasteurized cream and salt, are natural.  Plaintiff cannot allege that a reasonable consumer would share his idiosyncratic interpretation of the Grass-Fed and Natural Claims, or allege actual reliance, causation, and damages with the required specificity.  As a matter of law, Plaintiff's conclusory allegations, based on attenuated suppositions and assumptions, all fail to state a valid cause of action.

Moreover, Plaintiff cannot base his fraud and negligent misrepresentation, CLRA, FAL, and UCL claims on the website images depicting happy cows in green grass pastures, with statements such as "The Grass Really is Greener Over Here" and "Our Happy Grass-Fed Cows."  FAC ¶ 33.  These images and statements constitute non-actionable puffery.  "Generalized, vague, and unspecified assertions constitute 'mere puffery' upon which a reasonable consumer could not rely, and hence are not actionable" under the UCL, FAL, and CLRA.  *Anunziato v. eMachines, Inc.*, 402 F. Supp. 2d 1133, 1139 (C.D. Cal. 2005); *Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv.*, 911 F.2d 242, 245 (9th Cir. 1990).  Whether a

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA  90401-2386

1   statement is puffery may be decided as a matter of law on a motion to dismiss.  *Id.* at

2   245.  The puffery images and statements on the Kerrygold website do not provide

3   any facts about how much grass the cows actually consume, and would not lead a

4   reasonable consumer to share Plaintiff's interpretation that "Grass-Fed" and

5   "Natural" mean *exclusively* grass fed.

6               **B.**      **Plaintiff's Claims for Breach of Express Warranty Fail.**

7               Plaintiff's claim for breach of express warranty fails for lack of an

8   "affirmation of fact or promise by the seller to the buyer which relates to goods and

9   becomes part of the basis of the bargain creates an express warranty that the goods

10  shall conform to the affirmation or promise."  Cal. Com. Code § 2313(a).  To

11  adequately plead a cause of action for breach of express warranty, "'one must allege

12  the exact terms of the warranty, plaintiff's reasonable reliance thereon, and a breach

13  of that warranty which proximately causes plaintiff injury.'"  *Bates v. Kashi*

14  *Company,* 2012 WL 12847001 (C.D. Cal. 2012) *quoting Williams v. Beechnut*

15  *Nutrition Corp.*, 185 Cal. App. 3d 135, 142 (1986).  Just as this Court held in

16  granting the defendant's motion to dismiss plaintiff's express warranty claim in

17  *Bates* based on a "natural" product description, no express warranty was provided

18  here.  The Butter Product labels do not contain the word "warranty," and Plaintiff

19  does not and cannot quote the express terms of any warranty.

20              **C.**      **Plaintiff's Fraud and Negligent Misrepresentation Claims Fail.**

21              Plaintiff also cannot satisfy the pleading requirements for fraud or deceit.  To

22  do so, Plaintiff must allege "(a) a misrepresentation (false representation,

23  concealment, or nondisclosure); (b) scienter or knowledge of its falsity; (c) intent to

24  induce reliance; (d) justifiable reliance; and (e) resulting damage."  *Hinesley v.*

25  *Oakshade Town Ctr.*, 135 Cal. App. 4th 289, 294 (2005), quoting *Lazar v. Superior*

26  *Court*, 12 Cal. 4th 631, 638 (1996).  In order to plead a claim for negligent

27  misrepresentation, Plaintiff must allege that the defendant lacked any reasonable

28  ground for believing the statement to be true.  *Charnay v. Cobert*, 145 Cal. App. 4th

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA  90401-2386

21

1   170, 184 (2006).  As with all of Plaintiff's claims, his fraud and negligent

2   misrepresentation claims therefore fail for lack of a false statement or

3   misrepresentation.  As demonstrated above, the "Grass-Fed" and "Natural"

4   representations are neither false nor misleading.

5        In addition, under Rule 9(b), "[i]n alleging fraud or mistake, [the Plaintiff]

6   must state with particularity the circumstances constituting fraud or mistake."  Fed.

7   R. Civ. P. 9(b).  "Averments of fraud must be accompanied by 'the who, what,

8   when, where, and how' of the misconduct charged."  *Vess v. Ciba-Geigy Corp.*

9   *USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (quoting *Cooper v. Pickett*, 137 F.3d 616,

10  627 (9th Cir. 1997)).  "In other words, the plaintiff must specify the time, place, and

11  *content* of the alleged fraudulent or mistaken misconduct."  *Pappas,* Case No. 3:16-

12  cv-00612-MMA-JLB, at 10; *Ham*, 70 F. Supp. 3d at 1197 (describing the "what" as

13  the labels on the subject product).   In addition, "[i]n order to recover on a claim for

14  fraud, the plaintiff must specifically establish the "detriment proximately caused' by

15  the defendant's tortious conduct."  *Zito v. Steeplechase Films, Inc.,* 267 F.Supp.2d

16  1022, 1027 (N.D. Cal. 2003) (citing Cal. Civ. Code § 3333).  "Deception without

17  resulting loss is not actionable fraud."  *Id.* at 1028.

18       In *Bates v. Kashi Co.*, 2012 WL 12847001, at *10 (C.D. Cal. 2012) and in

19  *Thurston v. Bear Naked, Inc.*, 2012 WL 12845621, at *8 (C.D. Cal. 2012), this

20  Court granted defendants' to dismiss the plaintiffs' fraud claims based on labeling of

21  the products as "natural" and "100% natural" because the plaintiffs could not meet

22  this heightened pleading standard.  The same is true here.

23       Plaintiff cannot plausibly and particularly allege that the "Grass-Fed" or

24  "Natural" representations are false, let alone that Ornua knew the claims were false

25  or lacked any reasonable ground for believing them to be true.  Plaintiff cannot

26  plausibly and particularly allege that his interpretation is reasonable or shared by

27  other consumers, that he justifiably relied on the representations, or that he suffered

28  damages as a result.  Plaintiff's amended complaint still fails to specifically allege

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA  90401-2386

1   which representations he read and relied upon, which Butter Products he actually

2   purchased, the specific price premiums he allegedly paid for those products, or that

3   they did not contain the unadvertised nutrients or provide the unadvertised health

4   benefits that he allegedly sought – in other words, that he suffered any damages.

5       **D.    Plaintiff's UCL Claim Fails.**

6       Plaintiff's UCL claim also fails, due to his inability to plausibly allege that

7   Ornua engaged in an unlawful, fraudulent or unfair business act or practice.[13]  Cal.

8   Bus. Prof. Code §§ 17200, *et seq.*  For all the reasons discussed above, Plaintiff

9   cannot satisfy any of these prongs, and also lacks standing due to the absence of

10  specific economic damages.  Cal. Bus. & Prof. Code § 17204; *Chamberlan v. Ford*

11  *Motor Co.,* 369 F. Supp. 2d 1138, 1149-1150 (N.D. Cal. 2005); *Uyeda v. J.A.*

12  *Cambece Law Office, P.C.,* 2005 WL 1168421, *5 (N.D. Cal.).

13      **E.    Plaintiff's Unjust Enrichment Claim Fails.**

14      Plaintiff's new cause of action for unjust enrichment similarly fails.  Unjust

15  enrichment requires a plausible allegation of defendant's "receipt of a benefit and

16  unjust retention of the benefit at the expense of another." *Lectrodryer v. SeoulBank*,

17  77 Cal. App. 4th 723, 726 (2000).  Plaintiff alleges he purchased butter labeled as

18  natural and made from milk from cows that eat grass. That is precisely what

19  Plaintiff got. Plaintiff offers no specific facts regarding any supposed price premium

20  charged by Ornua, and no facts as to what specific advertisement claims he relied on

21  to his detriment. Most importantly, Plaintiff alleges no facts regarding the benefits

22  he did receive and whether, for example, he consumed the butter. Those facts are

23  critical to consideration of any claim for unjust enrichment and determination of

24  what amount Defendants did not rightfully retain. Plaintiff's unjust enrichment

25

26  [13]   Section 17200's fraudulent prong, and the statutes on which Plaintiff relies to
        assert a claim under section 17200's unlawful prong, require Plaintiff to allege a
27      fraudulent statement or advertising that is likely to deceive a reasonable
        consumer. *Freeman v. Time, Inc.,* 68 F.3d 285, 289 (9th Cir. 1995) (applying
28      reasonable consumer test under Section 17200's fraudulent prong).

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA  90401-2386

1   claims, like his other claims, is fatally flawed and should be dismissed.

2   **VII.   <u>PLAINTIFF'S CLAIMS ARE PREEMPTED BY THE NBDS.</u>**

3          To the extent any of Plaintiff's allegations survive, which they should not, the

4   claims are preempted.  While Plaintiff stops short of specifically alleging that the

5   Butter Products contain GMOs, he implies they do by alleging that Ornua "feeds its

6   cows genetically modified and other grains" and that "[t]he existence of genetically

7   modified and other grains in the diets of Kerrygold cows undermines the health

8   benefits of grass-fed butter."  FAC ¶ 34.  Plaintiff's claims are therefore preempted

9   by the NBFDS, which President Obama signed into law on July 29, 2016.[14]

10         The NBFDS expressly "prohibit[s] a food derived from an animal to be

11  considered a bioengineered food solely because the animal consumed feed produced

12  from, containing, or consisting of a bioengineered substance.  7 U.S.C.

13  1639b(b)(2)(A).  The NBFDS preempts Plaintiff's state-law claims based on the

14  cows' possible consumption of GMOs.  The statute precludes states from

15  establishing "[s]tate food labeling standards" that are "not identical to the mandatory

16  disclosure requirement under that standard."  7 U.S.C. § 1639b(e).  In addition,

17  Section 1639i expressly provides for federal preemption of state GMO labeling

18  regulations.  7 U.S.C. § 1639i(b).

19         Preemption here is not premature just because the implementing regulations

20  have not yet been finalized.  *Kao v. Abbott Laboratories, Inc.*, 2017 WL 5257041

21  (N.D. Cal. 2017).  "Whether or not the USDA has enacted regulations regarding

22  GMO labeling, the federal preemption provision of Section 1639i explicitly

23  precludes states from imposing their own labeling requirements.  Thus, the

24  preemption issue turns not on whether the USDA has promulgated GMO labeling

25  rules, but whether Plaintiffs' claims fall within the express preemption provision."

26

27  [14]   On May 4, 2018, the USDA published proposed regulations for implementing
         the NBFDS.  The Agricultural Marketing Service (AMS) sent the final rule to the
28       Office of Management and Budget (OMB) for review on August 31, 2018.

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA  90401-2386

*Id.*  In a case of first impression, in *Kao*, the U.S. District Court for the Northern District of California considered whether the NBFDS preempts state law claims alleging that baby formula was falsely labeled and advertised as "non-GMO," where small amounts of GMO materials were found.  The court stated that "[t]here is no dispute that Section 1639i is 'a statute that explicitly preempts state law.'"  *Id.* at *6, citing *Chae v. SLM Corp.*, 593 F.3d 936, at 941 (9th Cir. 2010).  The court noted that the NBFDS precludes states from "directly or indirectly establish[ing] ... any requirement relating to the labeling of whether a food ... is genetically engineered ... or contains an ingredient that was developed or produced using genetic engineering." 7 U.S.C. § 1639i(b).  Thus, the relevant question is whether, in asserting state-law claims, the plaintiff seeks to "directly or indirectly establish … any requirement relating to the labeling of" food as it relates to GMOs.

Although the court in *Kao* held that the plaintiff's state-law claims were not preempted, *Id.* at *8-9, that case is distinguishable.  There the plaintiff's claims were based on labeling of infant formula as "non-GMO" where it had been tested and confirmed to contain GMO materials.  *Id.* at *1.  Here, in contrast, Plaintiff alleges that the Butter Products are falsely labeled as containing "Milk From Grass-fed Cows" and "Natural" based on the cows' possible consumption of GMO feed – despite the fact that the NBFDS expressly states that such milk products are not to be considered bioengineered.  This flies in the face of the express language as well as the reasoning of the statute.  Therefore, Plaintiff's claims that labeling and advertising of the Butter Products is false and misleading, due to the cows' possible consumption of bioengineered grains, are expressly preempted by the NBFDS.

## VIII.  <u>CONCLUSION</u>

For the foregoing reasons, Plaintiff respectfully requests that the Court grant Defendant's motion to dismiss in its entirety.  Because Plaintiff cannot cure the inherent defects in his claims, the dismissal should be without leave to amend.

Bryan Cave Leighton Paisner LLP
120 Broadway, Suite 300
Santa Monica, CA  90401-2386

1   Dated:  December 10, 2018          BRYAN CAVE LEIGHTON PAISNER LLP

2

3                                     By:   /s/ Douglas A. Thompson

4                                     Douglas A. Thompson, Attorneys for
                                      Defendants Ornua Foods North America,
5                                     Inc. and Ornua Co-operative Limited

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

USA01\12335624.7\C065376\2394559

DEFENDANTS' MOTION TO DISMISS FAC                    CASE NO. 3:18-CV-01538-H-MDD

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386